[Civ. No. 5912.   Third Appellate District.—October 29, 1937.]

CHARLES L. GILMORE, Petitioner, v. STATE COMPENSATION INSURANCE FUND OF THE STATE OF CALIFORNIA et al., Respondents.

Charles L. Gilmore, *in pro. per.*, for Petitioner.

U. S. Webb, Attorney-General, Ralph H. Cowing, Deputy Attorney-General, Carroll S. Bucher and Frank J. Filippi for Respondents.

THE COURT.—This is a petition for a writ of *mandamus* to require the refunding of that portion of an annual premium paid by the Templar Mining Company to the State Compensation Insurance Fund of California, which was not expended during the life of the insurance policy in payment of compensation for injuries and disabilities sustained by the employees of the insured company. Separate demurrers were filed by the respondents on the ground that the petition fails to state facts sufficient to warrant the issuance of the writ. A verified answer to the writ was also filed by the respondents.

Incident to the enforcement of the statutory system for payment of compensation to workmen for injuries or disabilities sustained by them in the course of their employment, the California State Compensation Insurance Fund was created by statutes enacted pursuant to the provisions of article XX, section 21, of the Constitution of California. That section provides:

"The legislature is hereby expressly vested with plenary power, unlimited by any provisions of this Constitution, to create and enforce a complete system of workmen's compensation, by appropriate legislation . . . [including] full provision for adequate insurance coverage against liability to pay or furnish compensation; full provision for regulating such insurance coverage in all its aspects, *including the establishment and management of a State compensation insurance fund.*"

The petition merely alleges that the Templar Mining Company was duly incorporated and engaged in the enterprise of mining in the state of California; that on April 22, 1935, the State Compensation Insurance Fund of California issued its policy and insured the employees of that company against injuries or disabilities incurred by them in the course of their employment, until March 18, 1936, for which policy the mining company paid the respondent Insurance Fund the sum of $1420.07 as an annual premium therefor; that during that period the insurer expended of that sum only the sum of $199 to compensate for injuries sustained by the mining

company's employees; that on January 14, 1937, the Insurance Fund repaid to the mining corporation the sum of $482.82, as dividends to which the insured was entitled; that the unconsumed portion of the annual premium paid by the insured amounted to the sum of $738.25, which sum belongs to the insured and which the insurer refuses to pay; that the Insurance Fund has accumulated by wrongfully withholding overpaid premiums on policies during the past twenty years approximately the aggregate sum of $14,000,000 which is deposited to its credit with the state treasurer and in various banks in California; that said claim for a refund amounting to $738.25 was assigned to this petitioner, who thereupon demanded payment thereof from the respondents, which was refused. This petition for a writ of *mandamus* was then instituted.

The petitioner contends that the constitutional provision from which we have quoted limits the amount which the State Compensation Insurance Fund may collect as premiums on insurance policies to such sums as will compensate the employees of the insured industries for the injuries, disabilities and deaths incurred by the employees in the course of their employment, together with the cost of administering the fund for that purpose, and that the accumulation in that fund of $14,000,000 in the past twenty years is proof of the fact that excess premiums have been collected and retained by the Compensation Insurance Fund. It is contended that portion of the premium collected from the Templar Mining Company, which has not been expended for the purposes specified, belonged to it. That claim was assigned to this petitioner. In support of the foregoing assertion section 11775 of the Insurance Code (Stats. 1935, p. 496; Deering's Supp. for 1935, p. 1069, Act 3748) is cited. That section provides:

"The fund shall, after a reasonable time during which it may establish a business, be fairly competitive with other insurers, and it is the intent of the Legislature that the fund *shall ultimately become neither more nor less than self-supporting.* For that purpose loss experience and expense shall be ascertained and dividends or credits may be made as provided in this article."

We are of the opinion the demurrers to the petition should be sustained. The petition fails to state facts suffi-

cient to authorize the issuing of a writ of *mandamus* to compel the treasurer to pay to the petitioner any part of the reserve fund claimed in the sum of $738.25.

It has been determined that by the adoption of article XX, section 21, of the Constitution, and the Workmen's Compensation Act, it was intended to provide only for compensation by employers *for their own servants and their dependents,* and that legislation which purports to exceed that authorization is beyond the power conferred by the Constitution and therefore void. (*Commercial Cas. Ins. Co.* v. *Industrial Acc. Com.,* 211 Cal. 210, 216 [295 Pac. 11] ; *Pacific Gas & Elec. Co.* v. *Industrial Acc. Com.,* 180 Cal. 497, 503 [181 Pac. 788] ; *People* v. *Yosemite Lumber Co.,* 191 Cal. 267 [216 Pac. 39] ; *People* v. *Standard Oil Co. of California,* 132 Cal. App. 563 [23 Pac. (2d) 86].)

A discretion is conferred on the commission with respect to the proportion of premiums which shall be allowed and distributed in cash dividends to employers who are insured therein. Section 11777 of the Insurance Code provides that:

"Such cash dividend or credit is to be the amount which the commission *in its discretion* considers to be the employer's proportion of divisible surplus."

It is true that the discretion which is conferred on the commission to declare dividends from excessive premiums which have been charged for insurance may not be arbitrarily exercised. It is evident that the law contemplates that since the fund is to become only "self-supporting" any portion of the premiums which are collected from insured employers in excess of compensation necessarily paid and the cost of creating and maintaining the fund, is to be refunded in dividends or credited on the renewal of subsequent premiums paid by the insured. It is difficult to determine just what proportion of premiums is necessary to meet all of the obligations incurred incident to the payment of compensation and the maintenance of the fund. Certainly the petition in the present proceeding fails to allege facts from which we may determine what proportion of the unexpended premium, if any, is unnecessary for those purposes.

Under the police powers of the state, for the purpose of securing employees and their dependents in the payment of compensation for injuries sustained, the Constitution authorized the creation and maintenance of the State Compensation

Insurance Fund to make "full provision for adequate insurance coverage against liability to pay or furnish compensation; full provision for regulating such insurance coverage in all its aspects, including the establishment and management of a State compensation insurance fund". Pursuant thereto appropriate legislation was enacted authorizing the State Industrial Accident Commission to engage in compensation insurance business "to the same extent as any other insurer". (Secs. 11770 and 11778, Insurance Code.) The State Compensation Insurance Fund is an agency of the state. (*Rauschan* v. *State Comp. Ins. Fund,* 80 Cal. App. 754, 760 [253 Pac. 173].) The commission is authorized to establish and maintain an insurance business "competitive with other insurers". (Sec. 11775, Ins. Code.) To that end the commission is vested with full power, authority and jurisdiction over the fund. "It may perform all acts necessary or convenient in the exercise of any power, authority or jurisdiction over the fund, either in the administration thereof or in connection with the insurance business to be carried on by it . . . *as fully and completely as the governing body* of a private insurance carrier." (Sec. 11781, Ins. Code.) All insurance carriers within the state, including the State Compensation Insurance Fund, must file with the state insurance commissioner classifications of their respective risks and premium rates together with their systems of schedule rating. The state insurance commissioner must then hold hearings and determine upon uniform classifications of risks and premium rates and adopt a uniform system of schedule rating applicable to all insurance carriers, subject only to further changes thereof by the commissioner after a subsequent hearing. All insurance carriers are prohibited from renewing or issuing policies for employers for workmen's compensation at premium rates less than those which are fixed and approved by the insurance commissioner. (Sec. 602b, Pol. Code, as amended, Stats. 1933, chap. 335, p. 922; sections 11732–11740, Insurance Code.)

The premium rates are to be fixed pursuant to section 11820 of the Insurance Code, as nearly as practicable, to ascertain:

"(a) Bodily risk or safety, or other hazard of the plant, premises or work of each insured employer.

"(b) The manner in which the work is conducted.

"(c) A reasonable regard for the accident experience and history of each such insured.

"(d) A reasonable regard for the insured's means and methods for caring for injured persons."

The basis for the fixing of such premium rates is provided by section 11822 of the same code as follows:

"The rates fixed by the commission shall be that percentage of the payroll of any employer which, *in the long run and on the average,* will produce a sufficient sum, when invested at three and one-half per cent interest:

"(a) To carry all claims to maturity. The rates shall be based upon the 'reserve' and not upon the 'assessment' plan.

"(b) To meet the reasonable expenses of conducting the business of the fund.

"(c) To produce a reasonable surplus to cover the catastrophe hazard."

Pursuant to law the State Compensation Insurance Fund of California was organized January 1, 1914. Since that time it has issued half a million insurance policies. It now has approximately 35,000 policies in force. It maintains twelve offices in the state with some 500 employees. It is authorized to, and because of the uncertainty of its current and future expenses and unknown obligations of necessity it must, maintain a surplus reserve fund. Not only must the fund pay all lawful claims for injuries and disabilities incurred by employees covered by the insurance together with future liabilities growing out of their ailments incurred in the course of employment, such as occupational diseases against which the statute of limitations has not run, but it must also pay all current expenses incident to the maintenance of the business such as soliciting and writing insurance, investigating and adjusting claims, defending suits, enforcing contracts, employing officers and attorneys, and providing against possible unusual catastrophes.

Dividends may be declared only as required by section 11776 of the Insurance Code, which reads:

"The actual loss experience and expense of the fund shall be ascertained on or about the first of January in each year for the year preceding. If it is then shown that there exists an excess of assets over liabilities, necessary reserves, and a reasonable surplus for the catastrophe hazard, then a cash dividend may be declared to, or a credit allowed on the re-

newal premium of, each employer who has been insured with the fund.''

Before declaring a dividend to any insured employer the fund must make full provision for meeting all past and future obligations incurred under the policy together with contingent expenses of the fund chargeable thereto. The proportionate share chargeable to the policy must be placed in the surplus fund reserve for the payment of all obligations. This fund consists of two major reserves: (1) The present value of the future instalments of compensation payable on account of *past* accidents, whether known or unknown, generally called the ''loss reserve''. (2) Provision for losses and expenses to arise during the remainder of the unexpired term of current policies, usually called the ''unearned premium reserve''.

In the absence of allegations in the petition to the contrary we must assume that the respondents in this proceeding have complied with all of the provisions of law with respect to the premium rate of insurance involved, the payment of compensation and the determining and distribution of dividends, and that the result shows that no part of the claimed residue amounting to the sum of $738.25 is due the petitioner.

For the reason that the petition fails to allege facts indicating that any portion of the alleged claim is due the petitioner, the demurrers should be sustained. It is so ordered.

An application by petitioner to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 27, 1937.