ALSEA VENEER, INC.,
an Oregon corporation;
Mo's Enterprises, Inc., an Oregon corporation;
Thompson's Sanitary Service, Inc.,
an Oregon corporation;
Willamette Valley Shade, Inc., an Oregon corporation;
Production Parts, Inc., an Oregon corporation;
Nobel & Bittner Plug Company, Inc.,
an Oregon corporation;
Green Transfer & Storage Company,
an Oregon corporation, on their own behalf
and on behalf of those similarly situated;
Donald M. Drake Co., an Oregon corporation;
Kaufman Crushing, Inc., an Oregon corporation;
Mt. Hood Meadows, Oreg., Ltd., an Oregon corporation;
Road & Driveway Paving, an Oregon corporation;
Staff Jennings, Inc., an Oregon corporation;
Griffith Rubber Mills, an Oregon corporation;
Stanley Investment and Management, Inc.,
an Oregon corporation;
Harsch Investment Corp., an Oregon corporation;
Barrett Mobile Home Transport, Inc.,
an Oregon corporation;
Oregon Manufactured Housing Association,
an Oregon corporation;
and H.T. Rea Farming Corp., an Oregon corporation,
*Petitioners on Review/Respondents on Review,*

*v.*

STATE OF OREGON,
Anthony Meeker, Treasurer of State of Oregon,
Oregon Department of Revenue
and its Director, Richard Munn,
and State Accident Insurance Fund Corporation,
*Respondents on Review/Petitioners on Review.*

(CC 88C-11289; CA A68787 (Control); SC S40047)

ABC ROOFING CO., INC.,
an Oregon corporation, for itself individually
and for all other persons similarly situated;

Abbott & Simpson Roofing & Sheet Metal, Inc.,
an Oregon corporation;
Associated Oregon Loggers,
an Oregon nonprofit corporation;
Battles Construction Company, Inc.,
an Oregon corporation;
Baugham and Son, Inc., an Oregon corporation;
Beaver Plumbing & Heating, Inc.,
an Oregon corporation;
Brosterhous Construction Co., an Oregon corporation;
Chambers Plumbing and Heating, Inc.,
an Oregon corporation;
Clark Electric Inc., an Oregon corporation;
Irving L. Wells, John M. Hansen and Dennis M. Baker,
an Oregon Partnership dba Clow Roofing & Siding Co.;
J.C. Compton Company, an Oregon corporation;
Dehaas & Associates, Inc., an Oregon corporation;
Donald M. Drake Company, Inc.,
an Oregon corporation;
Durbin Construction Co., an Oregon corporation;
Floyd Grahm Construction Co., an Oregon corporation;
S & B James Construction Co., an Oregon corporation;
Ray D. Kalal dba Ray D. Kalal — Grading Contractor;
Neil Kelly Co., Inc., an Oregon corporation;
Morris P. Kielty General Contractor, Inc.,
an Oregon corporation;
L.P. Company, an Oregon corporation;
Meade & Greenlee, Inc., an Oregon corporation;
Morrison Electric Company, an Oregon corporation;
Morse Bros., Inc., an Oregon corporation;
Oregon-Columbia Chapter,
The Associated General Contractors of America, Inc.,
an Oregon nonprofit corporation;
Oregon Concrete & Aggregate Producers
Association, Inc., an Oregon nonprofit corporation;
Bill Page Construction, Inc., an Oregon corporation;
V. M. Philip & Son, Incorporated,
an Oregon corporation;
Pioneer Masonry Restoration Co., Inc.,
an Oregon corporation;
Pioneer Waterproofing Company, Inc.,
an Oregon corporation;

Reimers & Jolievette, Inc., an Oregon corporation;
River Bend Sand & Gravel Co., an Oregon corporation,
dba Salem Road & Driveway Co.;
Salem Wood Products, Inc., an Oregon corporation;
Slayden Holm, Inc., an Oregon corporation;
Sprick Roofing Co., Inc., an Oregon corporation;
Temp-Control Mechanical Corp., an Oregon corporation;
Tigard Electric, Inc., an Oregon corporation;
Valley Concrete & Gravel Co., Inc.,
an Oregon corporation;
Fred Joyner and Sherry Joyner,
dba Dial One Kwik Klip Maintenance
and Perfection Bark Blowing;
and Rose City Electric, Inc.,
an Oregon corporation,
*Petitioners on Review/Respondents on Review,*

*v.*

STATE OF OREGON,
and State of Oregon by and through Anthony Meeker,
in his capacity as Treasurer of the State of Oregon,
and Anthony Meeker, in his capacity
as Treasurer of the State of Oregon;
State of Oregon by and through
the Oregon Department of Revenue,
and its Director, Richard Munn,
and State Accident Insurance Fund Corporation,
a public corporation,
*Respondents on Review/Petitioners on Review.*

(88C-11300; CA A68788; SC S40048)

862 P2d 95

Jacob Tanzer, of Ball, Janik & Novack, Portland, argued the cause and filed the petition and response for petitioners on review/respondents on review Alsea Veneer, Inc., et al, and ABC Roofing Co., Inc., et al. With him on the response were Bruce W. DeKock, of Ball, Janik & Novack, Portland; Bruce M. Hall, Portland; and Bruce C. Hamlin and Charles F. Hudson, of Lane Powell Spears Lubersky, Portland.

William F. Gary, Special Assistant Attorney General, of Harrang Long Watkinson Laird & Rubenstein, P.C., Eugene, argued the cause and filed the petition and response for respondents on review/petitioners on review State of Oregon, et al. With him on the petition and response were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem, and Sharon A. Rudnick, Special Assistant Attorney General, Eugene.

Cecil B. Strange, of Stoll Stoll Berne & Lokting, Portland, and Phil Goldsmith, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

Before Carson, Chief Justice, and Peterson, Gillette, Van Hoomissen, Fadeley, and Unis, Justices.

PETERSON, J.

## PETERSON, J.

This is Round 3 of a dispute stemming from an act of a special session of the 1982 Legislative Assembly when, in breach of a contract and in violation of Article I, section 21, of the Oregon Constitution, it amended ORS 656.634[1] and ordered that $81 million be transferred from the Industrial Accident Fund (IAF) to the General Fund. Round 1 was decided in the state's favor in 1983 when this court held, in a declaratory judgment action brought by the Attorney General, that the State Accident Insurance Fund Corporation (SAIF) lacked authority to hire, without obtaining prior authorization from the Attorney General, a private law firm to bring an action to determine the legality of the 1982 legislative action. This court affirmed a trial court ruling that SAIF was among the entities required by statute to use the services of the Attorney General and, therefore, that SAIF's employment of outside counsel was impermissible, without first having obtained the authorization of the Attorney General to do so. *Frohnmayer v. SAIF*, 294 Or 570, 660 P2d 1061 (1983).

Round 2 was decided by this court in 1988. In *Eckles v. State of Oregon*, 306 Or 380, 402-03, 760 P2d 846 (1988), an action brought by a SAIF insured (SAIF was not a party), this court held: (1) that, "[b]y directing the State Treasurer to transfer $81 million from the IAF to the General Fund, section two of the Transfer Act breached the state's contract with employers insured with SAIF"; and (2) that section four of the Transfer Act violated Article I, section 21, the impairment of contract provision of the Oregon Constitution.

Before September 3, 1982, ORS 656.634 provided:

"(1)  The Industrial Accident Fund is a trust fund exclusively for the uses and purposes declared in ORS 656.001 to 656.794, except that this provision shall not be deemed to amend or impair the force or effect of any law of this state specifically authorizing the investment of moneys from the fund.

---

[1] Unless otherwise stated, all statutory references in this opinion are to the statutes in existence immediately following the 1982 Special Session of the Oregon Legislature.

"(2)   The State of Oregon declares that it has no propri-
etary interest in the Industrial Accident Fund or in the
contributions made to the fund by the state prior to June 4,
1929. The state disclaims any right to reclaim those contri-
butions and waives any right of reclamation it may have had
in that fund."

*Eckles v. State of Oregon, supra,* held that ORS 656.634
"expressed a contractual promise of the state to employers
who insured with SAIF that the state would not transfer IAF
funds to the General Fund," 306 Or at 393, and that the 1982
amendment of ORS 656.634[2] violated Article I, section 21, of
the Oregon Constitution (which prohibits the state from
passing laws that impair the obligation of contracts). *Id.* at
399. The legislation requiring the $81 million transfer
breached that promise. *Id.* at 402.

Round 3 (this case) began after *Eckles* was decided,
when various employers insured by SAIF filed two actions.
The plaintiffs sought damages and equitable relief requiring
that the state be required to return the $81 million to SAIF
and that SAIF be required to administer the $81 million for
workers' compensation purposes, including the possible pay-
ment of dividends or reduction of premiums, as SAIF would
have done had the money not been taken in 1982. The actions
were consolidated in the trial court.

In all, there are over 38,000 employers having poten-
tial claims against the state. There are essentially three
classes of employers: employers with retrospectively rated
policies; employers with group policies; and employers with
standard policies. Plaintiffs in the cases at bar include
employers who are representative of all classes of employers

---

[2] In special session, the 1982 Legislative Assembly amended ORS 656.634(2) to
read as follows:

"*Subject to the right of the State of Oregon to direct legislatively the
disposition of any surplus in excess of reserves and surplus deemed actuarially
necessary according to recognized insurance principles, and necessary in addi-
tion thereto to assure continued fiscal soundness of the State Accident Insurance
Fund Corporation both for current operations and for future capital needs*, the
State of Oregon declares that it has no proprietary interest in the Industrial
Accident Fund or in the contributions made to the fund by the state prior to June
4, 1929. The state disclaims any right to reclaim those contributions and waives
any right of reclamation it may have had in that fund." Or Laws 1982, spec sess
3, ch 2, § 4 (added language emphasized).

insured by SAIF at the time of the 1982 legislation. Among other relief, plaintiffs sought:

1. Class certification of the three classes under ORCP 32.

2. Damages.

3. As equitable relief, that the State of Oregon be ordered to retransfer the $81 million, with interest, to the IAF, and that SAIF be ordered to administer the IAF as it would have administered it, had the $81 million not been taken out of the IAF. (We will refer to such claims as the "equitable claims.")

The trial court: (1) denied plaintiffs' request for class certification under ORCP 32 C(2); (2) dismissed a number of plaintiffs' claims for failure to state a claim; (3) granted summary judgment on some of the other claims; (4) denied plaintiffs' claims for equitable relief; and (5) dismissed SAIF as a defendant. The modified claims for damages of three plaintiffs were submitted to a jury, which found for defendants. Plaintiffs appealed to the Court of Appeals.

The Court of Appeals reversed, holding that the trial court erred in all of its rulings except the ruling denying plaintiffs' request for equitable relief. *Alsea Veneer, Inc. v. State of Oregon*, 117 Or App 42, 49-56, 843 P2d 492 (1992). As for those claims, the Court of Appeals read *Eckles* to hold that specific performance of the contract was not an available remedy, *id.* at 49, and affirmed the trial court, saying:

> "We affirm the trial court's dismissal of the equitable claims of the *Alsea* plaintiffs against the state. Those plaintiffs argue that a complete remedy must require the state to return $81 million to IAF so that SAIF and its Board of Directors may declare dividends or reduce premiums for the year in question in a manner consistent with good faith. In *Eckles*, the Supreme Court rejected that contention, holding that, under Article I, section 21, the state is not obliged to return the funds. 306 Or at 401-03." *Id.* at 56.

Even though the Court of Appeals affirmed the dismissal of plaintiffs' equitable claims, it nonetheless appears to have ordered equitable relief. It concluded:

> "The state contracted with SAIF policyholders through SAIF, and SAIF is therefore a necessary party. Additionally,

SAIF's presence is necessary for plaintiffs to obtain complete relief on their only cognizable claim for damages for breach of contract by the state. Only SAIF can determine how the transfer of $81 million from IAF affected its March, 1983, dividend declaration and the premiums that it charged plaintiffs. *Plaintiffs are entitled to compel SAIF to determine how it would have exercised its discretion if it had had the extra $81 million in 1983." Ibid.* (emphasis added).

Plaintiffs filed a petition for review seeking reversal of the trial court and Court of Appeals' rulings concerning the equitable claims. Defendants sought review of the Court of Appeals' rulings adverse to them. We first will consider defendants' assertions that the Court of Appeals erred in certifying the class. Then we will consider the equitable issue raised by both plaintiffs and defendants: What equitable relief are plaintiffs entitled to on remand?[3]

On the issue whether the Court of Appeals erred in reversing the trial court's denial of plaintiffs' motion to certify the class, we agree with the Court of Appeals' analysis as to that question and see no reason to discuss it further. *See Alsea Veneer, Inc. v. State of Oregon, supra,* 117 Or App at 52-55. The other issues raised by defendants are resolved by our decision on the equitable claims, an issue as to which we reach a different conclusion from that reached by the Court of Appeals.

■ In their Third Amended Complaint, the *Alsea* plaintiffs alleged:

"As a consequence of the enactment and application of the Transfer Act, plaintiffs have suffered irreparable harm to their contractual relationships with the State of Oregon and with SAIF. Plaintiffs have lost potential dividends and/or prospective reductions of insurance premiums which would have been available but for defendants' unlawful acts, and

---

[3] Concerning equitable relief, in their petition for review, defendants assert:

"The Court of Appeals erred in concluding that SAIF Corporation should be compelled on remand to determine how it would have exercised its discretion if it had an additional $81 million in 1983."

In their petition for review, plaintiffs assert:

"This court, on review, should correct the error by addressing plaintiffs' claim for equitable relief on its contract and trust claims, clarifying its holding in *Eckles* and mandating the state to pay $81 million plus interest to the IAF for the purpose of distribution as it would have been distributed for 1982."

must proceed under ORCP 32J. Plaintiffs have an inadequate remedy at law. Plaintiffs are therefore entitled to an injunction requiring the State Defendants to return to the IAF a sum equal to all losses suffered by the IAF because of the transfer. Plaintiffs are also entitled to an injunction directing defendants to declare dividends and/or reduce employer premiums from any funds returned to the IAF in a manner consistent with their statutory and contractual obligations to those employers which, but for the transfer, would have received dividends or reduced premiums."

That complaint also contained a Fifth Claim for Relief entitled "Derivative Action Against Defendants," which alleged:

"Prior to the breach by defendants of their contractual promises not to transfer or permit to be transferred IAF funds to the general fund, defendant SAIF in *SAIF v. Oregon*, Marion County Circuit Court No. 13647, sought to restrain State Defendants from causing such transfer. However, as a result of *Frohnmayer v. SAIF*, 294 Or 570 (1983), SAIF was disabled from prosecuting said action. To this date, and despite the Supreme Court decision in *Eckles, supra*, SAIF has been unable or unwilling to require the return to itself of the funds so transferred. While demand that SAIF take such action has been timely made upon SAIF by plaintiffs, such demand is in any event rendered futile by the continued acquiescence by SAIF in State Defendants' legal position that SAIF may not seek the return of IAF funds."[4]

The IAF "is a trust fund exclusively for the uses and purposes declared in [ORS 656.001 to 656.990]." ORS 656.634. The promise to the various classes of employers, as stated in ORS 656.634(1), was to use all IAF funds for

---

[4] In their Court of Appeals brief, plaintiffs state:

"ORS 656.634(1) requires that the Fund be expended exclusively for purposes connected with ORS ch 656, i.e. for workers compensation purposes. That requirement is part of the state's contract and the policyholders are entitled to enforce it. A dividend is but one possible purpose under ORS ch 656. If the entire $81 million is not distributed in dividends, then plaintiffs and other policyholders are entitled to invoke the assistance of equity to require that all undistributed funds be returned to the Fund to be applied 'exclusively for the uses and purposes declared in ORS 656.001 to 656.694.'

"Plaintiffs are entitled to complete relief. A damages trial goes only to dividends. Plaintiffs are entitled under the contract to a broader scope of relief. They are entitled to the benefit of requiring undistributed funds to be expended for nondividend workers compensation purposes. If the court accepts defendants' theory that not all of the $81 million would have been distributed, then only equitable remedies can provide complete relief."

workers' compensation purposes and for no other purpose. The state breached that promise in 1982.

IAF funds are administered by SAIF for a number of purposes, only one of which is the declaration of dividends. We cannot here decide what precise uses SAIF would have put the $81 million to, had the money not been taken. It might have been used for one or a combination of the following: for refunds to participating employers/insureds, ORS 656.642(2)(b); for augmenting reserve accounts, ORS 656.635(1), 656.640; for loss payments, rehabilitation, safety programs, or SAIF administration; for dividends to SAIF employers/insureds; for reduction of future premiums; or for any other workers' compensation purpose. *See, e.g.*, ORS 656.508(2) (SAIF, annually, may "readjust, increase or decrease the premium rates"). The point is that the employers were a party to a contract with the state, and the state's taking of the $81 million deprived them of some or all of the multiple benefits that the $81 million would have been put to, had the state not taken the money. Perhaps SAIF would have paid a greater dividend to some of or all the employers here represented. Then again, it might not have.

■   Defendants argue that plaintiffs should be limited to their remedies at law. We disagree. Equitable relief does not lie if there is an adequate remedy at law. *Johnson v. Steen*, 281 Or 361, 575 P2d 141 (1978). The remedy at law must be practical, efficient, and adequate, as full a remedy as that which can be obtained in equity. *N.Y. Life Ins. Co. v. Yamasaki*, 159 Or 123, 78 P2d 570 (1938). Equitable relief is appropriate here, because the remedy in damages is not an adequate remedy. In addition to whatever dividend or reduced premium, if any, that SAIF would have declared to its policyholders but for the taking of the $81 million, plaintiffs are entitled to the other benefits that that money would have provided.

A remedy at law — an action for damages — could not, as a practical matter, recompense plaintiffs for their losses aside from the dividends. Valuation of each plaintiff's share of the essentially intangible nondividend benefits would be extremely difficult. More importantly, what plaintiffs actually lost is something whose true value only equity

can return to them — a system with the additional economic flexibility that the $81 million would give it.

In a practical sense, this case is like a shareholder's derivative action against a corporation that refuses to act. SAIF allegedly is unwilling to make any claim against the state. At least two actions necessarily are involved in affording relief to plaintiffs. One is to get the $81 million back in SAIF's hands. The second is for the trial court to decree how SAIF shall administer the fund with the $81 million in it. An equity court is better able to decide questions relating to the exercise of corporate discretion than is a jury. Indeed, this court has stated that equity can compel a corporation to declare a dividend. *Baillie v. Columbia Gold Min. Co.*, 86 Or 1, 16-18, 166 P 965, 167 P 1167 (1917); *accord* 11 Fletcher, Cyclopedia of Private Corporations 744, § 5325 (1986). Only by ordering the return of the funds to SAIF, so that the court can decree an appropriate administration of the fund by SAIF, can full and complete relief be afforded to plaintiffs.

The trial court and the Court of Appeals read *Eckles v. State of Oregon, supra*, to hold that specific performance of the contract, *i.e.*, return of the $81 million, was not an available remedy. We do not read *Eckles* as narrowly as did the Court of Appeals. *Eckles* rejected the plaintiff's claim for damages because the "[p]laintiff neither sought compensation nor produced any evidence that he had been damaged by the state's breach of contract." 306 Or at 402. The *Eckles* court also denied plaintiff's request for injunctive relief — return of the $81 million to the IAF — saying:

> "[Plaintiff] sought a declaratory judgment that the Transfer Act was 'null and void and unconstitutional' and a 'mandatory injunction' for the return to the IAF of the funds transferred. The state is not obliged by Article I, section 21, to return the funds to the IAF, but the circuit court erred in not awarding plaintiff a declaratory judgment that section four of the Transfer Act is unconstitutional insofar as it affects employers with SAIF insurance contracts that were in existence on or before the date of the enactment of the Transfer Act." *Id.* at 402-03.

*Eckles* does not foreclose equitable relief in this case. It was appropriate for this court there to state that "[t]he state is not obliged by Article I, section 21, to return the funds

to the IAF," *id.* at 403, because specific performance was not at issue in *Eckles*. Indeed, specific performance was not sought. Therefore, *Eckles* was not the proper forum in which to consider or grant specific performance. It is also significant that neither SAIF nor any other employer was a party in *Eckles*. Here, all necessary parties are before this court. SAIF is a party, and *all* classes of employers insured with SAIF at the time in question also are before the court and represented here.

The relief to which plaintiffs are entitled is this. First, the State of Oregon must be ordered to repay the $81 million, with interest, to the IAF. Second, plaintiffs are entitled to the additional relief that they can establish that they are entitled to under the equitable claims of their Third Amended Complaint, subject to any defenses that defendants may raise by answer.

As a practical matter, with respect to the second aspect of relief, the trial court, sitting in equity, eventually will be required to determine what would have happened, had the $81 million transfer not occurred. The trial court will have to determine, after hearing, what the SAIF board would have done, in 1982 and thereafter, had the $81 million been available to it. Then the trial court should enter an appropriate decree directing SAIF, as steward of the IAF, to act in accordance with that determination. That may or may not mean that dividends will be distributed to some or all classes of employers insured with SAIF. The relief may or may not include reduced premiums to one or more classes. The specific form of relief is for the trial court to select, based on the evidence presented and any defense asserted.

We note that SAIF, which strongly opposed the state's action in 1982, now resists the very relief that it so fervently sought in 1982. We emphasize that good faith must be exercised by SAIF in implementing any action decreed by the trial court. SAIF has no legal license to attempt once again to pass the money to the General Fund under the first clause of *current* ORS 656.634(2). *See* note 2, *ante*.[5] The trial court

---

[5] Defendants also assert that the jury's verdict should stand as to the claims that were decided there. For the reasons stated earlier, those claims should not have been permitted to go to the jury in the first place. The appropriate inquiry includes what dividends, if any, what premium reductions, if any, and the total panoply of

erred in dismissing plaintiffs' equitable claims in their Third Amended Complaint. Those claims should be reinstated, and the case should proceed appropriately. Defendants should file an answer to the equitable claims and the class action should go forward.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgments of the circuit court are reversed, and the cases are remanded to the circuit court for further proceedings consistent with this opinion.

---

other benefits, if any, that the various classes would have received. We are convinced, as was the Court of Appeals, that the posture in which the issues were presented to the jury for decision differs so greatly from the issues that should have been decided that the plaintiffs whose cases actually did go to a jury did not have a fair trial of their actual claims.