997 P.2d 591

KELSO & IRWIN, P.A. (now known as Starr Kelso Law Office, Chartered), Plaintiff–Appellant,

v.

STATE INSURANCE FUND; and Drew Forney, Manager of the State Insurance Fund, individually pursuant to I.C. # 72–907, Defendants–Respondents.

No. 24814.

Supreme Court of Idaho, Coeur d'Alene, October 1999 Term.

March 3, 2000.

Rehearing Denied April 27, 2000.

Starr Kelso Law Office, Chtd., Coeur d'Alene, and Ball Janik, LLP, Portland, OR, for appellant. James T. McDermott argued.

Hon. Alan G. Lance, Attorney General, Boise, for respondents. Michael S. Gilmore argued.

TROUT, Chief Justice.

Kelso & Irwin, P.A. (now known as Starr Kelso Law Office, Chartered (Kelso)) appeals from the district judge's dismissal of its complaint for failure to state a claim upon which relief could be granted pursuant to I.R.C.P. 12(b)(6). Kelso argues the judge erred in dismissing the case because Kelso has a vested contract or property interest in the monies and assets of the State Insurance Fund (SIF).

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Kelso is a professional corporation that has obtained worker's compensation insurance from SIF since 1993. One of Kelso's former employees died in an on-the-job automobile accident, and that employee's minor child will be entitled to worker's compensation benefits until the age of majority. On May 9, 1996, a complaint was filed by Kelso. This complaint sought a permanent injunction prohibiting the SIF from selling worker's compensation insurance at the artificially low premiums established by the 1996

amendments to I.C. § 41–1612(2) and (3).[1] The complaint also sought an award of attorney fees against Drew Forney (Forney), the manager of the SIF, under the private attorney general doctrine, or alternatively under I.C. § 12–117. SIF then filed a motion to dismiss, arguing SIF's policyholders are not shareholders, and policyholders have no contractual, property, equity, or trust interests in the SIF's surpluses or reserves. A hearing was held on July 18, 1996 before the district judge, who then ruled from the bench, granting SIF's motion to dismiss. On July 22, 1996, Kelso filed a Motion for Reconsideration and a hearing was held on that motion on August 26, 1996. On December 18, 1997, the district judge vacated his motion to dismiss and held that Kelso did have a property interest in the fund, as do policyholders similarly situated.

On May 8, 1998, Kelso filed its First Amended Complaint. The Amended Complaint included the original request for an injunction as well as (1) the return of all monies to the policy holders held by SIF under the designation of "surplus as regards policyholder" in excess of the six million dollars of "reserves and surpluses" required by I.C. § 72–911; and (2) an accounting and recovery of assets squandered by SIF through invalid and illegal use of monies in the surplus. At the hearing held on May 12, 1998, the district judge, ruling from the bench, reversed his prior reconsideration order and held "as a matter of law that the State Insurance Fund's policyholders have no vested or protected property rights or contract rights in the assets or funds held in the State Insurance Fund," and again granted SIF's Motion to Dismiss. This appeal followed.

## II.

### STANDARD OF REVIEW

 When we review an order of the district court dismissing a case pursuant to I.R.C.P. 12(b)(6), the non-moving party is entitled to have all inferences from the rec-

ord reviewed in its favor. *See Miles v. Idaho Power Co.,* 116 Idaho 635, 637, 778 P.2d 757, 759 (1989). After drawing all inferences in the non-moving party's favor, we then ask whether a claim for relief has been stated. *See id.* We ask not whether the non-moving party will ultimately succeed in its claim, but whether it is "entitled to offer evidence to support the claims." *Orthman v. Idaho Power Co.,* 126 Idaho 960, 962, 895 P.2d 561, 563 (1995) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90, 96 (1974)).

## III.

### DISCUSSION

To survive SIF's motion to dismiss, Kelso must have some vested or protected property or contract right in the assets or funds of the SIF. Therefore, we will first address Kelso's arguments as to its alleged property rights in the SIF's surplus and assets.

### A. Kelso Has No Vested Property Right in the Surplus and Assets of the State Insurance Fund Sufficient to Support a Claim for Relief.

Kelso first argues that when the Idaho legislature created the SIF, it intended to create a public mutual insurance company. Secondly, Kelso argues that even if the SIF is not a public mutual company, the SIF's statutory structure still provides the policyholders with a property interest in the SIF's assets. Third, Kelso argues that even if the statutes do not provide policyholders with a property interest in SIF's assets, this Court's prior cases have established the policyholders have a property interest in SIF's assets. Finally, Kelso argues the SIF is estopped from denying the policyholders have a property interest in the SIF's assets. We will address each argument in turn.

### 1. The SIF Is Not a Public Mutual Insurance Company.

 The determination of the nature of the SIF requires this Court to interpret

---

1. This is the amendment which extended worker's compensation to farm workers, reduced the minimum annual worker's compensation premium for certain qualifying small employers to

$150–300 from the $750 otherwise prescribed by the National Council of Compensation Insurance (NCCI), and required that insurers file a premium calculated on an annual salary of $13,000.

SIF"s statutory provisions. An interpretation of a statute is a question of law over which we exercise free review. *See State v. Hagerman Water Right Owners*, 130 Idaho 727, 732, 947 P.2d 400, 405 (1997). Additionally, if it is necessary for this Court to interpret a statute, then we will attempt to ascertain legislative intent. *Id.* at 733, 947 P.2d at 406. Finally, in construing a statute, this Court may examine the language used, the reasonableness of the proposed interpretations, and the policy behind the statute. *Id.*

According to Kelso, the Idaho legislature's intent to create a mutual insurance carrier is evidenced both by the title of the Act which originally created the SIF, as well as the SIF"s statutory framework. In the title of the original Act creating the SIF, it does state the Act, among other things, makes "general provisions for the administration by the State Insurance Manager of a public mutual insurance carrier." *See* Workmen's Compensation Act, ch. 81, 1917 Idaho Sess. Laws 252. Additionally, as noted by Kelso, the Act also uses other terminology consistent with the creation of a mutual insurance carrier. For example, the Act provides for the creation of accounts for individual employers, the payment of dividends (at the discretion of the manager), assessments of employers if the premiums do not meet the losses (although this provision was later repealed), and the continued liability for assessments of any employer who chooses to terminate its insurance with SIF. *See* Workmen's Compensation Act, ch. 81, §§ 91–93, 97, 1917 Idaho Sess. Laws 252, 284–87. Under I.C. §§ 41–2844 and 41–2847, a mutual insurer also may pay dividends to its policyholders and members of a mutual insurance carrier may be assessed if premiums do not cover losses. Additionally, I.C. § 41–2849 provides a mutual insurance company can exist even if its policyholders are not subject to assessment beyond their premiums. Finally, in the 1998 amendments to the SIF"s statutes, I.C. § 72–901(4) was added to make it clear the SIF is subject to, and must comply with, the

provisions of the Idaho insurance code. That provision also states "[f]or purposes of regulation, the state insurance fund shall be deemed to be a mutual insurer." *See* I.C. § 72–901(4) (1999). Therefore, in many ways SIF certainly resembles a mutual insurance carrier.

■ Although there are certain similarities, we find the differences between the SIF and a mutual insurance carrier far more significant. The most obvious differences are in the management of the SIF, as compared to the management of a private mutual insurance company. Originally, the management of the SIF was vested solely in the SIF manager who was appointed to that office by the Governor. In 1998, the statute was amended to provide for the creation of a board of directors of the SIF. *See* I.C. § 72–901 (1999). This board is appointed by the Governor and, in turn, appoints the manager. *See* I.C. §§ 72–901–02 (1999). This is clearly different from the management of a private mutual insurance carrier. Under I.C. §§ 41–2829 to 2835, a private mutual insurance carrier is managed by a board of directors who are elected by the policyholders. *See* I.C. § 41–2835 (1998). Under I.C. § 41–2832, the mutual insurance carrier is required to hold annual meetings for the election of board members and transaction of other business. *See* I.C. § 41–2832 (1998). Additionally, I.C. § 41–2831 states "[a] domestic mutual insurer is owned by and shall be operated in the interest of its members." I.C. § 41–2831 (1998). Finally, and perhaps most significantly, I.C. § 41–302 defines a "mutual" insurer as an "incorporated insurer without capital stock and the governing body of which is elected by its policy holders." I.C. § 41–302 (1998).

■ From a comparison of the two statutory schemes, we find it unlikely the Idaho legislature intended to create a mutual insurance company, despite its use of that term in the title of the original Act[2] and in the

---

2. Kelso argues that because Article III, Section 16 of the Idaho Constitution requires that the subject of an Act be contained in its title, and the Act creating the SIF uses the term "mutual insurance carrier," the SIF must necessarily be a

mutual insurance carrier. However, under the normal rules of statutory construction, although the title is part of the Act, it cannot be used to create an ambiguity when the body of the Act is clear. *See* 2A Sands, Sutherland Statutory Con-

amended I.C. § 72–901(4). Rather, we believe the legislature sought to create a state managed insurance fund that operated, in many ways, like a private mutual insurance company. This conclusion is supported, rather than diminished, by the fact the legislature specifically stated the SIF was to be *deemed* a mutual insurer *for the purposes of regulation* under the Idaho insurance code. *See* I.C. § 72–901(4) (1999). Additionally, this interpretation is much more consistent with the actual statutory structure of the SIF. The SIF is set up to operate like a mutual insurance carrier in that it covers the losses of its members through the collection of premiums and seeks to minimize the cost of worker's compensation insurance by returning dividends to policyholders out of the surplus. However, its management structure is much different than that of a mutual insurance company. While the SIF is administered and managed by people appointed by the Governor, a mutual insurance carrier is managed by people elected by the policyholders. In fact, the most compelling argument against a finding the SIF is a mutual insurance carrier is that the Idaho legislature chose not to give policyholders of the SIF the same rights as policyholders of mutual insurers. The SIF's statutes do not allow SIF's policyholders to vote for the board of directors or on any other issue, and nowhere does it provide the SIF is "owned by and shall be operated in the interest of its members." *Cf.* I.C. § 41–2831 (1998). Therefore, while the legislature obviously intended the SIF to operate like a mutual insurance company, it must not have intended the SIF to be "owned" by its policyholders in the same way a private mutual insurance company is owned by its policyholders. Consequently, Kelso does not have vested property interest in the assets of the SIF simply because the

SIF operates much like a private mutual insurance company.

## 2. SIF's Statutory Structure Does Not Create Property Rights in SIF's Policyholders.

■■■■ Not only does the SIF's statutory framework not provide for the creation of a mutual insurance company, it also fails to create any other property rights in the SIF's policyholders. As a creature of statute, the SIF is limited to the power and authority granted to it by the legislature. *See Welch v. Del Monte Corp.*, 128 Idaho 513, 514, 915 P.2d 1371, 1372 (1996). Similarly, any property rights a policyholder might possess must be found either in the insurance contract itself, or in the statutory framework of the SIF. Kelso has not alleged any property rights have arisen from the insurance policy, therefore the only place those property rights could have come from is the statute. However, the only references to ownership of the SIF's assets in the statutes are those that state the assets of SIF belong to SIF.[3] Kelso has not cited to any provisions which provide policyholders with property rights, but instead has essentially argued that since the money does not belong to the state, it must necessarily belong to the policyholders. *See State ex rel. Williams v. Musgrave*, 84 Idaho 77, 370 P.2d 778 (1962) (holding the assets of the state insurance fund deposited with the state treasurer were not state funds). This argument, however, ignores the third possibility, that SIF's assets belong to SIF to be used for the purpose of "insuring employers against liability for compensation under this worker's compensation law and the occupational disease compensation law and of securing to the persons entitled thereto the compensation provided by said laws." I.C. § 72–901(1).

---

STRUCTION § 47.03 (5th ed.1992). Here any ambiguity as to the status of the SIF is only created by the use of the term "mutual insurance carrier" in the title. As shown above, absent that language, the statutory structure of the SIF makes it clear that the SIF is not a mutual insurance carrier.

**3.** In fact, the statute mentions the "ownership" of the assets of the SIF only twice. Idaho Code § 72–901 states that the "fund shall consist of all premiums and penalties received and paid into

the fund, of property and securities acquired by and through the use of the moneys *belonging to the fund.*" I.C. § 72–901 (1999) (emphasis added). Additionally, I.C. § 72–912 states that the "endowment fund investment board shall at the direction of the manager invest any of the surplus or reserve funds *belonging to the state insurance fund . . . .*" I.C. § 72–912 (1999) (emphasis added).

This conclusion is certainly more consistent with the statutory structure of the SIF than Kelso's contentions. Additionally, there is nothing inequitable about this conclusion. The fact the SIF owns its assets does not mean Kelso is now in a worse position than it would have been if it had insured with a private company. Presumably, when Kelso decided to purchase its insurance from SIF, rather than a private insurance company, it did so because it wanted the benefit of receiving dividends, without the contingent liability associated with a mutual insurance company. If Kelso now feels the SIF is potentially insecure, it is free to withdraw from the SIF and purchase its insurance from a private company, although Kelso would remain liable for assessments as to all liabilities accruing prior to its withdrawal. *See* I.C. § 72–920 (1999). Therefore, we hold the SIF's statutory structure does not grant Kelso a property interest in the assets of the SIF.

### 3. This Court's Prior Cases Have Not Held That SIF's Policyholders Have a Property Interest in the Assets of the SIF.

Next, Kelso argues the SIF's policyholders nevertheless have a vested property right in the SIF's assets based on prior decisions of this Court and supported by decisions from other states. In support of its argument that this Court has previously recognized the policyholders of the SIF have a vested property interest in the SIF's assets, Kelso relies on the cases of *Atwood v. State of Idaho Dept. of Ag.*, 80 Idaho 349, 330 P.2d 325 (1958), and *State ex rel. Williams v. Musgrave*, 84 Idaho 77, 370 P.2d 778 (1962). However, neither of these cases directly addressed the issue of the policyholders' rights in the SIF's assets. In *Atwood*, the only issue was whether the filing of a claim with the SIF constituted the filing of a claim with the Industrial Accident Board. *See Atwood*, 80 Idaho at 352, 330 P.2d at 326. In holding the filing of a claim with the SIF did not meet the requirement of filing a claim with the Industrial Accident Board, this Court stated the SIF "is an independent agency and is not an arm of the Industrial Accident board, and has the status of a private insurance company." *Id.* at 353, 330 P.2d at 327. Clearly, in the context of the facts of that case, this Court's statement in *Atwood* only established the SIF was not an arm of the Industrial Accident Board, and that it operated as an independent state agency, not that the SIF was in fact a private insurance company.

Similarly, *Musgrave* did not deal with the status of the SIF's policyholders. Rather, the issue in *Musgrave* was whether the state treasurer, as custodian of the SIF's funds, could make payments from that fund without an appropriation by the legislature. The state auditor argued that once the money in the SIF was deposited into the state treasury, it became state money and therefore could not be withdrawn without an appropriation. The Court held:

> [t]he money in the fund does not belong to the state and is not in the state "treasury" within the meaning of art. 7, § 13, of the Constitution. It is deposited with the state "treasurer" as "custodian" and is held by him as such for the contributing employers · and the beneficiaries of the compensation law, and for the payment of the costs of the operation of the fund.

*Id.* at 84, 370 P.2d at 782. Again, in the context of the issue before the Court in *Musgrave*, this language did not establish the SIF's policyholders owned the assets of the fund, but instead held only that the money deposited with the state treasurer was not state money and was to be used to fulfill SIF's contractual obligations to its policyholders and pay for the operation of the SIF. Therefore, in contrast to Kelso's contentions, this Court has never held the SIF's policyholders have an ownership interest in the SIF's assets.

Kelso also cites to several cases from other states which it believes support the argument that Kelso has a vested property right in the SIF's assets. However, none of the cases actually address the issue of whether the policyholders own the assets of state insurance funds.[4] Rather, these cases almost ex-

---

4. In fact, it appears that only two state supreme courts have directly addressed the question of whether policyholders have a vested property interest in the state insurance fund. The New

clusively focus on whether the state can appropriate or in some other way control the assets. First, Kelso cites to the case of *Chez v. Industrial Commission of Utah*, 90 Utah 447, 62 P.2d 549 (1936). In that case, the Utah Supreme Court, examining statutory language similar to Idaho's, held the fund "belongs, not to the state, but to the contributing employers for their mutual benefit. It constitutes a pooling of risks under the auspices of the state." *Id.* at 551. However, as with *Musgrave*, the issue before the Utah Supreme Court was not whether the policyholders owned the fund, but whether an obligation owing to the fund was an obligation or liability owed to the state. *See id.* at 549–50.

Similarly, in *Gronning v. Smart*, 561 P.2d 690 (Utah 1977), another case cited by Kelso, the Utah Supreme Court was asked to decide if the monies of the fund were subject to appropriation by the Utah legislature. In holding the state insurance fund was not subject to appropriation, the Utah court reaffirmed it's holding from *Chez* and again stated the fund "is a trust fund to be used to meet the liabilities of employers when an employee is entitled to compensation." *Id.* at 692. However, as was the case in *Chez*, the Utah court was not directly faced with the question of whether the state insurance fund policyholders had any property interest in the fund.

Finally, Kelso cites an Oklahoma Supreme Court case as support for its position. In that case, *Moran v. State ex rel. Derryberry*, 534 P.2d 1282 (Okla.1975), the Oklahoma Supreme Court, like the Utah Supreme Court, faced the question of whether the money in the state insurance fund could be appropriated by the state. In holding the money in the state insurance fund was not state money, the Oklahoma court opined that "the funds of the State Insurance Fund are not State funds and do not belong to the State, that such funds are trust funds for the benefit of employers and employees...." *Id.* at 1288. As with the Utah cases, however, it must be emphasized that the Oklahoma court was not directly faced with the question of the nature of the policyholders' interest in the assets of the state insurance fund. Therefore, none of the cases cited by Kelso supports its contention that other states have recognized policyholders of a state insurance fund have a protectable property interest in the assets of those funds.

**4. SIF Is Not Estopped From Denying That Its Policyholders Have a Vested Property Right in SIF's Assets.**

 Finally, Kelso argues because the SIF has consistently represented to its policyholders that the SIF's surplus and reserves belong to the policyholders, the SIF should now be estopped from denying the policyholders' interest. The SIF responds that even if the statements rise to the level of estoppel, the doctrine of estoppel does not apply to the SIF under the facts of this case.

 The general rule is "[e]quitable estoppel may not ordinarily be invoked against a governmental or public agency functioning in a sovereign or governmental capacity." *State ex rel. Williams v. Adams*, 90 Idaho

York Court of Appeals addressed the question in the case of *Methodist Hospital v. State Insurance Fund*, 64 N.Y.2d 365, 486 N.Y.S.2d 905, 476 N.E.2d 304 (1985). In that case, the New York Court of Appeals held that the policyholders of the state insurance fund had neither a vested property or contract right in the surplus of the state insurance fund. However, *Methodist Hospital* is distinguishable from the present case. Under the New York statute, once an employer becomes a policyholder in the New York state insurance fund, it is relieved from all liability for injuries sustained by employees. *See id.* 486 N.Y.S.2d 905, 476 N.E.2d at 309 n. 4. Additionally, employers are protected even if the state insurance fund becomes insolvent because New York has accepted liability for payments that may be necessary if the fund is exhausted. *See id.* 486

N.Y.S.2d 905, 476 N.E.2d at 309. Idaho has not accepted liability in this manner and, therefore, the decision in *Methodist Hospital* is inapplicable to the case at hand.

The Michigan Supreme Court has also addressed the question of a policyholder's property interest in the state insurance fund. In *In re Certified Question*, 447 Mich. 765, 527 N.W.2d 468 (1994), the Michigan court held that the policyholders had no vested property right in the state insurance fund's surplus. However, in that case, the issue involved the sale of the entire fund to a private insurer, which the policyholders claimed constituted a taking of private property without just compensation. *See id.* at 470. Therefore, like the New York case, the Michigan decision is distinguishable from the facts of this case.

195, 201, 409 P.2d 415, 419 (1965). Therefore, because the SIF is undisputedly a public agency acting in a proprietary capacity, the doctrine of equitable estoppel would normally be applicable to the SIF. However, as a statutorily created agency, the SIF has only that authority granted to it by its statutory framework. Therefore, "[i]t may not exercise its sub-legislative powers to modify, alter, enlarge or diminish the provisions of the legislative act which is being administered." *Roberts v. Transportation Dept.,* 121 Idaho 727, 732, 827 P.2d 1178, 1183 (Ct.App. 1991). If equitable estoppel were applied to the statements made by the SIF's agents, then those agents would have effectively altered the SIF's statutory framework by granting the policyholders an ownership interest which the legislature did not intend them to have. *Cf. Pitner v. Federal Crop Ins. Corp.,* 94 Idaho 496, 501, 491 P.2d 1268, 1273 (1971) (holding the agency could be estopped because the rule violated by the agent was an administrative rule and the actions taken by the agent were within the statutory authority granted by Congress). Because nothing in the SIF's statutory framework granted the SIF the authority to give its policyholders an ownership interest in the SIF's assets, equitable estoppel does not apply to the SIF under the facts of this case. To hold otherwise would allow an administrative agency to expand its own powers and effectively amend statutes without legislative action.

 Additionally, in order for equitable estoppel to apply, there must be a "false representation or concealment of material facts." *Curry v. Ada County Highway Dist.,* 103 Idaho 818, 819, 654 P.2d 911, 912 (1982). In this case, any statement made by the SIF concerning the policyholders' "ownership" of the SIF's assets would be a mistaken statement of law, not fact. The general rule is that administrative officers of the state cannot estop the state through mistaken statements of law. *See, e.g., Austin v. Austin,* 350 So.2d 102, 105 (Fla.Ct.App.1977); *Rainaldi v. Public Emp. Retirement Bd.,* 115 N.M. 650, 857 P.2d 761, 769 (1993). Therefore, the mistaken statements of law contained in the SIF's newsletter cannot estop the SIF from denying the policyholders have an ownership interest in the SIF's assets.

For the foregoing reasons we hold the SIF's policyholders do not have a property right in the SIF's assets. Therefore, we must now address the question of whether Kelso has alleged sufficient contract rights to survive a motion to dismiss.

**B. Kelso's Breach of Contract Claims**

 It is undisputed that Kelso has a contract for worker's compensation insurance with the SIF. Any violation of the provisions of that contract would constitute a breach of contract by the SIF. Additionally, the contract necessarily incorporates the statutory framework which both created the SIF and governs the actions that can be taken by the SIF with regard to the SIF's funds. When Kelso contracted with the SIF it was entitled to rely on the statutes creating and regulating the SIF, and the limits those statutes place on how the SIF can invest its policyholders' premiums. Consequently, any act taken by the SIF beyond its statutory authority would also be a breach of the SIF's contract with Kelso.

In the Amended Complaint, Kelso lists four separate claims against the SIF: (1) a request for an injunction prohibiting the SIF from selling worker's compensation insurance at the artificially low premiums established by I.C. § 41–1612(2) and (3); (2) an award of attorney fees against the manager of the SIF;[5] (3) the return of all monies to the policyholders held by the SIF under the designation of "surplus as regards policyholder" in excess of the six million dollars of "reserves and surpluses" required by I.C. § 72–911; and (4) an accounting and recovery of assets allegedly squandered by the SIF through invalid and illegal use of monies in the surplus. Because we have held Kelso has no property interest in the SIF's assets, we now examine each claim to see if Kelso has alleged a claim for breach of contract sufficient to survive a motion to dismiss under I.R.C.P. 12(b)(6).

5. This is not an issue in this appeal.

### 1. Kelso Has Not Alleged a Breach of Contract With Regard to the Issuance of Policies at the New Premiums.

■ Kelso's first cause of action in its Amended Complaint contains various allegations of breach of contractual obligations and breach of the duty of good faith and fair dealing. However, a close examination of these allegations reveals they are based on the underlying premise that Kelso has some ownership or property interest in the SIF's surplus and assets, and allowing the SIF to sell policies at the new, lower premiums will negatively impact Kelso's property interest in the surplus and assets. Kelso has not alleged that allowing the SIF to sell the policies will result in a breach of any specific contract provision. Similarly, Kelso has not alleged that allowing the SIF to sell the policies will result in a violation of the SIF's statutory provisions. Indeed, it is difficult to see how selling the policies could violate the SIF's statutory provisions since the new, lower premiums are specifically authorized by statute. *See* I.C. § 41–1612(2) and (3) (1998). Therefore, because we have previously held Kelso does not have a property interest in the SIF's surplus and assets, and Kelso has otherwise failed to allege a breach of contract, we hold the district court did not err in dismissing this claim.

### 2. Kelso Has Alleged a Breach of Contract With Regard to the Return of Surplus.

In Kelso's third cause of action, Kelso has alleged the SIF's surplus has been accumulated in violation of the SIF's statutory authority and is in excess of the amount which is statutorily required by the former I.C. § 72–911 and, therefore, must be returned to the policyholders as dividends. The SIF points out that under the express language of I.C. § 72–915, the manager has discretion as to when to declare a dividend. In particular the statute states "[i]f at any time there is an aggregate balance remaining to the credit of any class of employment or industry which the manager deems may be safely and properly divided, he may in his discretion, credit each member of such class...." I.C. § 72–

915 (1999). In response to this express language, Kelso argues although the manager does have discretion, he does not have unfettered discretion as to when to declare a dividend. In support of this argument, Kelso cites to several cases from other jurisdictions which Kelso contends have allowed policyholders to sue over the administration of the surplus of the state insurance funds. However, each of these cases dealt with a different issue than the one currently facing this Court.

For example, in *Alsea Veneer, Inc. v. State*, 318 Or. 33, 862 P.2d 95 (1993), the Oregon Supreme Court dealt with a situation where the Oregon legislature had transferred $81 million from the surplus of the State Accident Insurance Fund (SAIF) to the state general fund. Policyholders sued the state for a return of that money and sought to have a court order SAIF to administer that money as SAIF would have, had the money not been transferred. The Oregon Supreme Court granted the policyholders demand for relief and ordered the $81 million be returned to the SAIF and the trial court should determine how that money would have been administered but for the transfer. *Id.* at 101. Clearly this is a different situation from the one at hand. In *Alsea*, the policyholders were not suing to have a dividend declared, but rather to have money returned to the SAIF and to have it administered as it should have been without the illegal transfer. Additionally, the Oregon court specifically stated the administration of that money "may or may not mean that dividends will be distributed to some or all classes of employers ... [and] ... may or may not include reduced premiums to one or more classes." *Id.* Therefore, this case does not stand for the proposition that policyholders can sue to *force* a declaration of dividends.

Similarly, the two California cases cited by Kelso, *Gilmore v. State Compensation Insurance Fund*, 23 Cal.App.2d 325, 73 P.2d 640 (1937) and *Security Officers Service, Inc. v. State Compensation Insurance Fund*, 17 Cal.App.4th 887, 21 Cal.Rptr.2d 653 (1993), dealt with interpretations of California's Compensation Insurance Fund. While the California courts did state the commission's

discretion to declare a dividend could not be arbitrarily exercised, each case is distinguishable from the case at hand. In *Gilmore*, the court focused on the fact that California's statute required the Compensation Insurance Fund become *only self-supporting* in deciding any money collected in excess of that needed to cover losses and the operation costs be returned to the policyholders. *See Gilmore*, 73 P.2d at 641–42. However, Idaho's statute does not require the SIF be only self-supporting; it simply states the SIF is to be administered without liability on the part of the state. *See* I.C. § 72–901 (1999). Therefore, the rationale of *Gilmore* is inapplicable to this case.

In *Security Officers Service*, the plaintiff sued the State Compensation Insurance Fund for breach of the covenant of good faith and fair dealing which affected both the premiums the plaintiff had to pay and the dividends it received. In reversing the lower court's grant of the Fund's motion to dismiss, the California Court of Appeals held the covenant of good faith did apply to the exercise of the commission's discretionary duties. However, this case does not apply to Kelso's suit because Kelso has not alleged the manager has breached any duty of good faith or fair dealing with regard to the accumulation of the surplus. Rather, Kelso's complaint alleges the current surplus is in excess of that which was minimally required by I.C. § 72–911,[6] and therefore the policyholders are entitled to a return of the excess surplus. Therefore, *Security Officers Service* does not support Kelso's arguments in this case.

While Kelso's complaint has failed to allege a breach of the duty of good faith and fair dealing with regard to the accumulated surplus, Kelso has alleged the surplus is in excess of what is statutorily required by I.C. § 72–911. Although I.C. § 72–911 was repealed by the Idaho legislature in 1998, this statute was in effect at the time Kelso's complaint was filed. Because we have held the SIF's statutory provisions are necessarily part of Kelso's contract with the SIF, and Kelso has alleged a violation of these statutory provisions, we believe Kelso has alleged sufficient facts to support a cause of action for breach of contract on this issue. Therefore, we hold the district court erred in dismissing this claim.

### 3. Kelso Has Alleged a Breach of Contract With Regard to the Squandering of Assets.

Finally, in its fourth cause of action, Kelso alleges the SIF has squandered assets and acted beyond its statutory authority by purchasing certain real property and then leasing that property to the State. The SIF argues the "squandering of assets" claim cannot withstand a motion to dismiss because courts routinely apply the business judgment rule to cases of this kind filed by stockholders and, according to the SIF, the same rule should be applied to Kelso in this case. Such an application would then result in the case being dismissed on the grounds that a court will not substitute its judgment for the company's. However, Kelso is not simply arguing the real estate transaction constitutes mismanagement or a waste of assets. Rather, Kelso is arguing the purchase and subsequent lease agreement with the State exceeded the SIF's statutory authority and was therefore an illegal act.[7] As we have previously stated, Kelso's contract with the SIF necessarily incorporates the SIF's statutory framework. Therefore, viewing all inferences in the light most favorable to Kelso, its allegation the SIF exceeded its statutory authority constitutes a sufficient claim of breach of contract as to withstand a motion to dismiss. Therefore, we hold the district court also erred in dismissing this claim.

---

6. This provision has since been repealed by the Idaho Legislature. *See* Act of Apr. 3, 1998, ch. 428, 1998 Idaho Sess. Laws 1346, 1349.

7. At oral argument, SIF also argued that the claim should be dismissed because Kelso could not prove any injury as a result of the real estate transaction. However, when we review a grant of a motion to dismiss pursuant to I.R.C.P. 12(b)(6), we are not concerned with what the plaintiff will ultimately be able to prove. Our only concern is whether the plaintiff has alleged sufficient facts to support a cause of action. In this instance, we believe that Kelso's amended complaint contains sufficient facts to support a cause of action for breach of contract on this issue.

## IV.

### CONCLUSION

For the foregoing reasons, we reverse the district court's order granting the SIF's motion to dismiss Kelso's complaint for failure to state a claim upon which relief can be granted. The case is remanded to the district court for further proceedings consistent with this opinion. We award costs, but not attorney fees, to the appellant.

Justices SILAK, SCHROEDER, WALTERS, and KIDWELL, concur.