Argued and submitted September 14, reversed and remanded December 9, 1992, Alsea Veneer's petition for reconsideration and state's petition for reconsideration denied April 14, both petitions for review allowed May 25, 1993 (316 Or 527)

ALSEA VENEER, INC.,
an Oregon corporation;
Mo's Enterprises, Inc., an Oregon corporation;
Thompson's Sanitary Service, Inc.,
an Oregon corporation;
Willamette Valley Shade, Inc.,
an Oregon corporation;
Production Parts, Inc., an Oregon corporation;
Nobel & Bittner Plug Company, Inc.,
an Oregon corporation;
Green Transfer & Storage Company,
an Oregon corporation, on their own behalf
and on behalf of those similarly situated;
Donald M. Drake Co., an Oregon corporation;
Kaufman Crushing, Inc., an Oregon corporation;
Mt. Hood Meadows, Oreg., Ltd.,
an Oregon corporation;
Road & Driveway Paving, an Oregon corporation;
Staff Jennings, Inc., an Oregon corporation;
Griffith Rubber Mills, an Oregon corporation;
Stanley Investment and Management, Inc.,
an Oregon corporation;
Harsch Investment Corp., an Oregon corporation;
Barrett Mobile Home Transport, Inc.,
an Oregon corporation;
Oregon Manufactured Housing Association,
an Oregon corporation;
and H. T. Rea Farming Corp., an Oregon corporation,
*Appellants,*

*v.*

STATE OF OREGON,
Anthony Meeker, Treasurer of State of Oregon,
Oregon Department of Revenue and its Director,
Richard Munn, and State Accident Insurance
Fund Corporation,
*Respondents.*

(88C-11289; CA A68787 (Control))

ABC ROOFING, CO., INC.,
an Oregon corporation, for itself individually
and for all other persons similarly situated;
Abbott & Simpson Roofing & Sheet Metal, Inc.,
an Oregon corporation;
Associated Oregon Loggers,
an Oregon nonprofit corporation;
Battles Construction Company, Inc.,
an Oregon corporation;
Baugham and Son, Inc., an Oregon corporation;
Beaver Plumbing & Heating, Inc.,
an Oregon corporation;
Brosterhous Construction Co.,
an Oregon corporation;
Chambers Plumbing and Heating, Inc.,
an Oregon corporation;
Clark Electric, Inc., an Oregon corporation;
Irving L. Wells, John M. Hansen
and Dennis M. Baker, an Oregon partnership
dba Clow Roofing & Siding Co.;
J.C. Compton Company, an Oregon corporation;
Dehaas & Associates, Inc., an Oregon corporation;
Donald M. Drake Company, Inc.,
an Oregon corporation;
Durbin Construction Co., an Oregon corporation;
Floyd Graham Construction Co.,
an Oregon corporation;
S & B James Construction Co.,
an Oregon corporation;
Ray D. Kalal dba Ray D. Kalal — Grading Contractor;
Neil Kelly Co., Inc., an Oregon corporation;
Morris P. Kielty General Contractor, Inc.,
an Oregon corporation;
L. P. Company, an Oregon corporation;
Meade & Greenlee, Inc., an Oregon corporation;
Morrison Electric Company, an Oregon corporation;
Morse Bros., Inc., an Oregon corporation;
Oregon-Columbia Chapter,
The Associated General Contractors of America, Inc.,
an Oregon nonprofit corporation;
Oregon Concrete & Aggregate Producers
Association, Inc., an Oregon nonprofit corporation;

Bill Page Construction, Inc., an Oregon corporation;
V. M. Philip & Son, Incorporated,
an Oregon corporation;
Pioneer Masonry Restoration Co., Inc.,
an Oregon corporation;
Pioneer Waterproofing Company, Inc.,
an Oregon corporation;
Reimers & Jolievette, Inc., an Oregon corporation;
River Bend Sand & Gravel Co., an Oregon corporation,
dba Salem Road & Driveway Co.;
Salem Wood Products, Inc., an Oregon corporation;
Slayden Holm, Inc., an Oregon corporation;
Sprick Roofing Co., Inc., an Oregon corporation;
Temp-Control Mechanical Corp.,
an Oregon corporation;
Tigard Electric, Inc., an Oregon corporation;
Valley Concrete & Gravel Co., Inc.,
an Oregon corporation;
Fred Joyner and Sherry Joyner,
dba Dial One Qwik Klip Maintenance
and Perfection Bark Blowing;
and Rose City Electric, Inc.,
an Oregon corporation,
*Appellants,*

*v.*

STATE OF OREGON
and State of Oregon by and through
Anthony Meeker, in his capacity as
Treasurer of the State of Oregon,
and Anthony Meeker, in his capacity as
Treasurer of the State of Oregon;
State of Oregon by and through
the Oregon Department of Revenue,
and its Director, Richard Munn,
and State Accident Insurance Fund Corporation,
a public corporation,
*Respondents.*

(88C-11300; CA A68788)
(Cases Consolidated)

843 P2d 492

Jacob Tanzer, Portland, argued the cause for appellants. With him on the briefs were Bruce M. Hall, Richard H. Allan and Ball, Janik & Novack, Portland; Bruce C. Hamlin, Charles F. Hudson and Lane Powell Spears Lubersky, Portland.

William Gary, Special Assistant Attorney General, Eugene, argued the cause for respondents. With him on the brief were Charles S. Crookham, Attorney General, Jack L. Landau, Deputy Attorney General, Virginia Linder, Solicitor General, Salem, Sharon A. Rudnick, Special Assistant Attorney General, Eugene, and Harrang Long Watkinson Arnold & Laird, P.C., Eugene.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Plaintiffs appeal from a judgment entered after a consolidated trial in which three of their cases went to the jury, which found that defendants were not liable for breach of contract. The errors assigned on appeal relate primarily to pretrial rulings.

The Industrial Accident Fund (IAF) is a statutory "trust fund exclusively for the uses and purposes declared in [ORS 656.001 to ORS 656.794]," which relate to workers' compensation. ORS 656.634(1).[1] The State Accident Insurance Fund Corporation (SAIF), an "independent public corporation," provides workers' compensation insurance to employers. Subject to the requirements of ORS 656.634, SAIF administers IAF and, in that sense, acts as a trustee. Funds received by SAIF become part of IAF, and IAF is the source for workers' compensation payments made by SAIF. ORS 656.632(2), (3). In September, 1982, the legislature, facing a state budget deficit, directed the transfer of $81 million from IAF, which it had determined had a surplus of over $168 million, to the State General Fund. Or Laws 1982 (Spec Sess 3), ch 2 (the Act). Section 1 of the Act sets forth extensive findings regarding the necessity for and appropriateness of the transfer. Section 2 directs the State Treasurer to transfer $81 million from IAF to the General Fund on or before June 30, 1983. Section 3 amends ORS 656.526, which grants SAIF the discretion to declare dividends, and Section 4 amends ORS 656.634 by adding language permitting the state to "direct legislatively the disposition of any surplus."

---

[1] ORS 656.634 provides:

"(1) The Industrial Accident Fund is a trust fund exclusively for the uses and purposes declared in this chapter, except that this provision shall not be deemed to amend or impair the force or effect of any law of this state specifically authorizing the investment of moneys from the fund.

"(2) Subject to the right of the State of Oregon to direct legislatively the disposition of any surplus in excess of reserves and surplus deemed actuarially necessary according to recognized insurance principles, and necessary in addition thereto to assure continued fiscal soundness of the State Accident Insurance Fund Corporation both for current operations and for future capital needs, the State of Oregon declares that it has no proprietary interest in the Industrial Accident Fund or in the contributions made to the fund by the state prior to June 4, 1929. The state disclaims any right to reclaim those contributions and waives any right of reclamation it may have had in that fund."

SAIF opposed the Act in the legislature. When it was unsuccessful, it retained private counsel to initiate a lawsuit against the state, asserting that the Act was unconstitutional. In *Frohnmayer v. SAIF*, 294 Or 570, 660 P2d 1061 (1983), the Supreme Court held that SAIF could not be represented by counsel other than the Attorney General without the Attorney General's consent. SAIF's challenge to the Act was subsequently dismissed for want of prosecution. In March, 1983, SAIF declared a 1982 dividend of $27 million.

After the Supreme Court's decision in *Frohnmayer v. SAIF, supra*, an employer insured by SAIF filed an action seeking, among other things, a declaration that the Act is unconstitutional and an injunction directing the state to return $81 million to IAF. In *Eckles v. State of Oregon*, 306 Or 380, 760 P2d 846 (1988), the Supreme Court held that, before its amendment by Section 4 of the Act, ORS 656.634 "expressed a contractual promise of the state to employers who insured with SAIF that the state would not transfer IAF funds to the General Fund." 306 Or at 393. The court said that the legislature's amendment of the statute to permit the transfer of funds from IAF was a valid and effective modification of the contract as to persons who purchased insurance from SAIF after the amendment. However, "insofar as it affects employers with SAIF insurance contracts entered into before the enactment of the Transfer Act," section 4 of the Act was an impairment of the obligation of a contract, in violation of Article I, section 21, of the Oregon Constitution. However, the court held that section 2 of the Act, which mandates the transfer of funds, is not in violation of Article I, section 21, because it "does not purport to change the terms of the state's contract but to mandate a breach of that contract." 306 Or at 400. That breach is lawful, the court said, "given the general law of contractual obligations and the state's undoubted ability to breach its contracts through the use of its power of eminent domain."

In such cases, the court ruled, "the state is not obliged by Article I, section 21, to perform its contracts according to the terms of those contracts, at least where, as in this case, the contractual interests of the parties with whom the state has contracted are financial or property interests." In other words, a majority of the court held that Article I,

section 21, does not require specific performance of the state's contract when monetary damages would be adequate. Thus, the state cannot be required to return the funds to IAF. Article I, section 21, "protects contractual interests by obliging the state to compensate for its breach of those contracts." 306 Or at 401. The court noted:

"We cannot infer from the statutes alone that employers insured by SAIF were harmed by the transfer of funds. Nothing in the statutes makes employers liable to injured workers for shortfalls in the IAF. * * * Insured employers may benefit from premium reductions and dividends drawn from surplus IAF funds. *See* ORS 656.508 and 656.526. These benefits are set in the 'discretion' of SAIF. *See id.* That 'discretion' does not preclude a showing that insured employers were harmed by the transfer, but the existence of that harm cannot be presumed." 306 Or at 402 n 24.

It noted, further, that Eckles had neither sought compensation nor produced any evidence that he had been damaged by the state's breach of contract.

Plaintiffs seek to represent a class described as all employers who were insured by SAIF between July 1, 1981, and September 2, 1982. The 17 plaintiffs in *Alsea Veneer, Inc. v. State of Oregon* (*Alsea*) initially sought declaratory and injunctive relief for breach of contract, impairment of contractual obligations and violation of due process and prayed that the state be required to transfer $81 million to IAF and that SAIF be required to declare dividends or reduce premiums accordingly. They amended their complaint to add a claim for unlawful taking of property and to pray for damages for breach of contract. The 40 plaintiffs in *ABC Roofing Co., Inc. v. State of Oregon* (*ABC*) seek damages for breach of contract and constitutional claims of impairment of the obligation of contract and the taking of private property without just compensation. The two cases were litigated separately until they were consolidated for trial.

The trial court dismissed all equitable and constitutional claims in both cases for failure to state claims, ORCP 21, leaving only the claims for damages for breach of contract against the state and SAIF. It also denied certification of the class, which is alleged to include approximately 38,000 policy holders. The court granted summary judgment to defendants

on the claims of the individual plaintiffs who were insured on non-standard policies or who were not insured by SAIF during the relevant period. The case went to trial as to the remaining five plaintiffs. After they rested, the court granted SAIF's motion for directed verdict, because there was no evidence that SAIF had participated in the breach of contract. The court also directed a verdict for defendants on the claims of two of the five remaining plaintiffs, because there was no evidence of damages. The case went to the jury as to the three remaining plaintiffs for aggregate damages of $355. The jury returned a verdict for defendants that the state was not "liable for damages for breach of contract."

At the relevant time, three different types of policies were issued by SAIF: retrospectively rated policies (retro), group policies and standard policies. Plaintiffs include employers in each category. Each category is subject to different premium and dividend practices. Under retro policies, the premiums paid by policyholders are generally adjusted during the coverage period, on the basis of the employers' claims experience. Retro policy holders can limit the impact of individual large claims on premiums. Group plans permit a number of small insureds to combine their experience to obtain the benefits available to larger employers under retro plans. Standard plan holders are those not covered by either retro or group policies. Their premiums are determined at the beginning of the coverage period and are not adjusted for loss experience during the period.

Historically, all three types of policyholders have received dividends from surplus. Retro and group policies together accounted for nearly 80% of all premiums paid under SAIF policies during the 1981-82 fiscal year and over 90% of the dividends paid in 1983.

■ In their arguments to this court, both parties make certain assumptions that we reject. Plaintiffs assume that the Supreme Court's opinion in *Eckles* establishes, as a matter of law, that the state owes $81 million plus interest to the members of the proposed class. *Eckles* determined only that the state had breached its contract with SAIF's policyholders. It expressly did not determine the amount, or even the existence, of damages. 306 Or at 402 n 24. ORS 656.526 provides that the SAIF Board of Directors must periodically

assess the reserves of IAF and that, in its discretion, it may declare dividends out of surplus. The statute does not require the Board to declare a dividend or dictate the formula for the calculation of a dividend. Both matters are left to the Board's discretion. Whether the Board would have declared a larger dividend in March, 1983, if the state had not transferred $81 million from IAF is a question of fact, as is the question of how each individual policyholder might have been affected. On that basis, we reject plaintiffs' contention that the trial court erred in denying their motion for a partial directed verdict that the jury must award $81 million to plaintiffs.

■· Defendants assume that, because the jury considered evidence of both parties concerning the effect of the transfer and returned a verdict that defendants are not liable to three of the named plaintiffs for breach of contract, it necessarily determined that no plaintiff suffered damages. In the first place, the jury's verdict as to three plaintiffs has no preclusive effect with respect to the remaining plaintiffs or to the members of the proposed class. Additionally, we have no means of knowing how the jury reached its verdict or whether the outcome might have been different, if the case had been tried as a class action, and if equitable relief had been granted requiring SAIF to determine how it would have exercised its discretion with respect to what it would have done with the $81 million. For that reason, if there was error in not certifying the class and in denying equitable relief against SAIF, the errors are prejudicial and require reversal.

The trial court granted defendants' motions for partial summary judgment as to the claims of the retro and group policyholders. It ruled as a matter of law that retro and group policyholders would not have received any greater dividends if the surplus available for distribution had been $81 million greater. There was evidence from which a jury could have found otherwise. Plaintiffs' actuarial expert testified that, if the $81 million had been available to SAIF in 1983, all policyholders would have received substantially larger dividends. SAIF's president at the time of the March, 1983, dividend declaration testified that the dividend would have been significantly larger if the available surplus had not been reduced by $81 million and that standard, group and retro policyholders would have shared proportionately in the

increased dividend. The evidence was sufficient to permit a jury to find that, without the transfer, dividends would have been greater for policyholders in all categories.

■ Plaintiffs assign error to the court's failure to certify the class. The question of certification is a legal one that involves issues of both law and fact. We review the trial court's factual determinations for substantial evidence and its legal conclusions for errors of law. *Bernard v. First Nat'l Bank*, 275 Or 145, 550 P2d 1203 (1976). As a matter concerning judicial administration, the trial court's assessment of the utility of a class action is entitled to "wide latitude." *Newman v. Tualatin Development Co. Inc.*, 287 Or 47, 51, 597 P2d 800 (1979). ORCP 32A provides:

"One or more members of a class may sue or be sued as representative parties on behalf of all only if:

"A(1)   The class is so numerous that joinder of all members is impracticable; and

"A(2)   There are questions of law or fact common to the class; and

"A(3)   The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

"A(4)   The representative parties will fairly and adequately protect the interests of the class; and

"A(5)   In an action for damages under subsection (3) of section B. of this rule, the representative parties have complied with the prelitigation notice provisions of section H. of this rule."

Only the criteria of subparagraphs A(2) through A(4) are in dispute here. We consider each of them in turn with regard to the proposed class.

■ The court concluded that the proposed class did not have "commonality," ORCP 32A(2), because "questions of law or fact, common to the proposed class, are not identifiable and are in many instances in conflict." The state contends that the only common issues among plaintiffs, such as the existence of a contract and a breach of the contract, do not call for adjudication, because they have already been resolved by the Supreme Court's opinion in *Eckles*, and that the remaining issues, such as each individual policyholder's entitlement to damages, are unique to each plaintiff. The trial court found

that the question of whether an insured had been damaged was an individual inquiry, as it must be under the court's decision in *Eckles*. In our view, however, there are common questions relating to damages that remain to be litigated in addition to the issues decided by *Eckles*. The first and foremost is what, if any, difference the transfer of $81 million made with respect to SAIF's declaration of dividends and determination of premiums with respect to each policy type. The fact that damages may be different with respect to the individual policyholders, or even that some policyholders may not be entitled to damages, does not negate the existence of the common legal and factual issues concerning the consequences of the transfer on SAIF's dividend and premium administration. We conclude that the proposed class satisfies the requirement of subparagraph (2).

The court held that the claims of the named plaintiffs were not typical, each to the other *or* to the claims of the proposed class. ORCP 32A(3). That requirement is satisfied if each claim "arises from the same event or practice or course of conduct that gives rise to the claims of members and [the] claims are based on the same legal theory." *Newman v. Tualatin Development Co. Inc., supra,* 287 Or at 50. Although the damages of the individual plaintiffs will vary, depending on policy type, loss experience and other factors, the claims of all class members arise from the same transaction and are based on the same contractual theory of liability. The fact that damages may differ among individual plaintiffs or that some plaintiffs may have suffered no damages does not render the claims atypical.

The court held that "the representative parties failed to demonstrate that they could adequately protect the interests of the proposed class because of the conflicting status of the varied SAIF Corporation policy holders." ORCP 32A(4). In this context, the interests of the class can be adequately protected if (1) there are no disabling conflicts of interest between the class representatives and the class; and (2) the class is represented by counsel competent to handle such matters. *See Penk v. Oregon State Board of Higher Education*, 93 FRD 45, 50 (D Or 1981). The state concedes that plaintiffs' counsel are competent to represent the proposed class.

The proposed class includes holders of the three types of policies; each policy type is also represented by the named plaintiffs. The state contends that the interests of the different policyholders diverge with respect to how SAIF might have allocated additional surplus and, in fact, that those interests conflict. For example, theoretically, the standard policyholders would benefit from a determination that SAIF would not have declared additional dividends to the retro and group policyholders, leaving more surplus for standard policyholders. Although, once again, damages may not be identical with respect to each policy type, each class member has a common interest in showing that, if the transfer had not occurred, SAIF would have paid larger dividends or reduced premiums. Differences in damages do not defeat typicality; they may be resolved with the creation of subclasses. ORCP 32G(2). We conclude that the proposed class satisfies the requirement of ORCP 32A(4).

Under ORCP 32B(3), a class action may be maintained if, in addition to the prerequisites of ORCP 32A:

"The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Common questions of law or fact shall not be deemed to predominate over questions affecting only individual members if the court finds it likely that final determination of the action will require separate adjudication of the claims of numerous members of the class unless the separate adjudications relate primarily to the calculation of damages. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action; (e) whether or not the claims of individual class members are insufficient in the amounts or interests involved, in view of the complexities of the issues and the expenses of the litigation, to afford significant relief to the members of the class; and (f) after a preliminary hearing or otherwise, the determination by the court that the probability of sustaining the claim or defense is minimal."

The trial court concluded that a class action is not superior to other available methods for the fair and effective adjudication of the controversy. It addressed three of the six criteria in subsection B(3), specifically, (c), (d) and (f), and resolved them against certification. We conclude, once again, that each of the criteria weighs in favor of certification.

For reasons we have stated earlier, the common question of how the transfer affected SAIF's dividend and premium policy predominates, even with possible differences or conflicts between subclasses relating to how SAIF might have allocated the additional surplus. A single adjudication of that question is preferable to piecemeal litigation and potentially inconsistent awards. ORCP 32B(3)(c). Class members are identifiable through SAIF's records. There is no indication that the class would be more difficult to manage than SAIF's annual administration of the dividends and premiums of its policyholders. Although the class is large, a single administration is undoubtedly less difficult than would be the management of the claims of each policyholder separately. ORCP 32B(3)(d). The factor stated in subparagraph (e) points up, perhaps, one of the most persuasive reasons for certification. As illustrated by the three claims that went to trial here, the claims of the individual class members are not likely to be adequate to cover the costs of litigation.

In considering the factor stated in ORCP 32B(3)(f), "the probability of sustaining the claim or defense," it is not appropriate for the court to determine whether plaintiffs are entitled to prevail; the court should only consider whether, from the evidence considered and the state of the law, plaintiffs' chances of prevailing "appear so minimal that they should be precluded from proceeding as a class action." *Newman v. Tualatin Development Co. Inc., supra*, 287 Or at 51. After *Eckles*, we cannot characterize plaintiffs' chances of prevailing as being that minimal.

Although, in our consideration of whether the class should have been certified, we give great latitude to the trial court, in view of the fact that each of the considerations in ORCP 32A and B weigh in favor of certification we conclude that the court erred in not certifying the class.

We affirm the trial court's dismissal of the equitable claims of the *Alsea* plaintiffs against the state. Those plaintiffs argue that a complete remedy must require the state to return $81 million to IAF so that SAIF and its Board of Directors may declare dividends or reduce premiums for the year in question in a manner consistent with good faith. In *Eckles*, the Supreme Court rejected that contention, holding that, under Article I, section 21, the state is not obliged to return the funds. 306 Or at 401-03.

█ We also conclude that it was appropriate for the court to allow SAIF's motion for a directed verdict on the breach of contract claims. There was no evidence that SAIF had breached its contract with plaintiffs; plaintiffs have no claim for money damages against SAIF. It would not have been appropriate for the damages claims against SAIF to have gone to the jury. Nonetheless, SAIF should not have been dismissed from the case. ORS 30.320 requires that a suit or action against the state be brought "by and through and in the name of the appropriate State agency upon a contract * * * made by such agency and within the scope of its authority." The state contracted with SAIF policyholders through SAIF, and SAIF is therefore a necessary party. Additionally, SAIF's presence is necessary for plaintiffs to obtain complete relief on their only cognizable claim for damages for breach of contract by the state. Only SAIF can determine how the transfer of $81 million from IAF affected its March, 1983, dividend declaration and the premiums that it charged plaintiffs. Plaintiffs are entitled to compel SAIF to determine how it would have exercised its discretion if it had had the extra $81 million in 1983.

Plaintiffs contend that the court erred in refusing to admit a copy of the Act in evidence. The court was correct that it is the court's responsibility to instruct the jury as to the law.

Reversed and remanded.