Argued and submitted October 19, 2007, affirmed September 10, 2008

Robert FROEBER,
Brenda Getz, and Vikki Baker,
guardian and next friend of Chris Baker, a minor,
*Plaintiffs-Respondents,*

*and*

Mindy GATHINGS,
*Plaintiff,*

*v.*

LIBERTY MUTUAL INSURANCE COMPANY,
Liberty Mutual Group,
Liberty Mutual Holding Company, Inc., and
Liberty Mutual Fire Insurance Company,
*Defendants-Respondents,*

*and*

Dr. Douglas UHL,
*Intervenor-Respondent,*

*and*

Vincent GIORDANO,
Judy Johnson, Lucy L. Hitchcock,
and Kimberley A. Bahel,
*Objectors-Appellants.*

Marion County Circuit Court
00C15234; A132263

193 P3d 999

John S. Spadaro argued the cause for objectors-appellants. On the opening brief were Conrad E. Yunker and Conrad E. Yunker, P.C. With them on the reply brief was John S. Spadaro.

Terrell W. Oxford argued the cause for respondents Robert Froeber, Brenda Getz, and Vikki Baker. With him on the brief were Susman Godfrey LLP; Daniel J. Gatti and Gatti, Gatti, Maier, Krueger, Sayer & Assoc.; Tom D'Amore and D'Amore & Associates; and James Nelson and Nelson & Macneil.

Russell R. Yager argued the cause for respondents Liberty Mutual Insurance Company, Liberty Mutual Group, Liberty Mutual Holding Company, Inc., and Liberty Mutual Fire Insurance Company. With him on the brief were Gabriela Gallegos and Vinson & Elkins, LLP, and Jan K. Kitchel, Andrew J. Lee, and Schwabe, Williamson & Wyatt, P.C.

No appearance for intervenor-respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

In this case, objectors to a class-action settlement appeal the trial court's approval of a settlement agreement. ORCP 32 D.[1] Specifically, objectors argue that the trial court erred by approving a settlement that (1) purported to release unpleaded claims that did not arise from the same factual predicate as the claims pleaded in the underlying class action and (2) provided inadequate and misleading notice as to claims that the settlement agreement released. For the following reasons, we affirm the trial court's approval of the settlement agreement.

This case originated with a complaint in which defendants are insurers that provided personal automobile casualty policies with Medical Payments (MedPay) and Personal Injury Protection (PIP) coverage to plaintiffs, who represent a putative class of insureds. Plaintiffs alleged that defendants improperly used a cost-containment software program to limit the amounts that they paid to medical providers and reimbursed to injured parties for medical treatment covered by the MedPay or PIP provisions of their automobile policies. Accordingly, plaintiffs asserted, defendants paid plaintiffs and putative class members less than the full amount due them for their reasonable and necessary medical treatment. Plaintiffs sought relief under several theories, including breach of contract, fraud, and unjust enrichment. Although the trial court denied plaintiffs' motion for class certification, the parties later agreed to settle the action between defendants and a proposed settlement class.[2]

---

[1] ORCP 32 D provides, in part:

"Any action filed as a class action in which there has been no [determination whether a class action is to be maintained] and any action ordered maintained as a class action shall not be voluntarily dismissed or compromised without the approval of the court[.]"

[2] The trial court denied plaintiffs' motion for class certification because it concluded that each of the theories under which plaintiffs asserted their claims required every class member to establish facts supporting an essential element of the claim. Hence, the court determined that none of plaintiffs' theories satisfied the class-certification requirements in ORCP 32 A.

Despite the court's refusal to certify the litigation class, as part of its final order, the trial court approved a class for settlement purposes only. The terms of the settlement included stipulations that ultimately eliminated the reasons for which the trial court denied certification of the litigation class. In addition, the trial

The relevant details of the settlement follow. The court conditionally certified, for settlement purposes only, a class made up of the following three subclasses: policyholders, claimants, and providers. Objectors are members of the claimant subclass, which the settlement agreement defined as all persons who, during the designated class period of January 1, 1996 through June 9, 2005,

"(i) suffered a 'Covered Injury,' which means an injury covered by the PIP and/or MedPay coverage provided by a [']Subject Policy,['' which means a personal automobile policy;]

"(ii) received 'Covered Treatment' for a Covered Injury, which means any medical treatment, medical service, medication, or prosthesis covered by the PIP and/or MedPay coverage provided by a Subject Policy[;]

"(iii) submitted (or allowed another to submit on his or her behalf) a 'Subject Claim,' which means a claim for payment or reimbursement of the costs of Covered Treatment under the PIP and/or MedPay coverage provided by a Subject Policy[;]

"(iv) received from [defendants] as the total payment or reimbursement for all Covered Treatments covered by a single Subject Policy (through payments to himself, to herself, or to others on his or her behalf) a total amount that was less than the PIP and/or MedPay policy limit(s) stated in that Subject Policy; and

"(v) received from [defendants] as payment or reimbursement for at least one Covered Treatment (through payments to himself, to herself, or to others on his or her behalf) an amount that was less than the charge billed for that treatment because [defendant] or one of its agents determined through the use of a computerized bill-review system that (a) the charge billed for that treatment exceeded the customary allowance for that treatment or (b) the treatment was provided by a preferred provider who had agreed to reduce the charge for that treatment."[3]

---

court made findings that the settlement class satisfied the class certification and maintenance requirements of ORCP 32 A and ORCP 32 B. *Cf. Amchem Products, Inc. v. Windsor*, 521 US 591, 619-21, 117 S Ct 2231, 138 L Ed 2d 689 (1997) (requiring federal class certification and maintenance requirements to be satisfied for approval of settlement). Objectors do not challenge those findings by the trial court.

[3] We describe only the claimant subclass in detail as it is the only subclass that is relevant to this appeal. However, for context, we summarize the definitions of

The settlement agreement between defendants and the settlement class provided, in part, that defendants would pay up to $6 million in payments to claimant and provider subclass members. In exchange, plaintiffs, on behalf of themselves and all members of the claimant and provider subclasses,[4] agreed to release defendants from all claims arising from "Subject Claims," which, as explained above, were claims "for payment or reimbursement of the costs of Covered Treatment under the PIP and/or MedPay coverage provided by a Subject Policy[.]" Specifically, those released claims included:

"any and all claims * * * arising from or in any way related to any acts which have been alleged or *which could have been alleged* in the Action by the Plaintiffs, the Settlement Class, and/or any Class Member concerning any Subject Claim, whether at law, in equity, or *under any statute* or regulation, and including without limitation:

"A.  any and all claims * * * for breach of contract, fraud, misrepresentation, consumer fraud, unfair trade practices, unfair insurance practices, unjust enrichment, and/or bad faith arising from or in any way relating to any Subject Claim,

"B.  any and all claims * * * for direct damages, indirect damages, actual damages, consequential damages, punitive damages, and/or exemplary damages, *prejudgment interest*, post-judgment interest, costs, expenses, and/or attorneys' fees, whether statutory or non-statutory, arising from or in any way relating to any Subject Claim, and

"C.  any and all Unknown Claims arising from or in any way relating to any Subject Claim * * *.

---

the other subclasses. The policyholder subclass comprised persons who, during the class period, purchased or were named as an insured in a personal automobile policy issued by a defendant providing PIP or MedPay coverage. The provider subclass included those who, during the class period, provided covered treatment, sought payment for the covered treatment under PIP or MedPay, and received from a defendant an amount less than the billed amount as a result of defendant's use of the computerized bill-review system or its preferred provider system.

[4] Policyholders who are not members of the claimant or provider subclass did not receive cash as part of the settlement, nor did the release apply to them. In addition, those who qualified as either claimant or provider subclass members could opt out of the settlement.

"10. 'Unknown Claim' means any claim arising out of newly discovered facts and/or facts found hereafter to be other than or different from the facts now believed to be true."

(Emphasis added.)

The settlement further set out the details of the notice to be disseminated to all potential class members by first-class mail and through publication.[5] The individual notice explained, among other things, class members' rights and options pursuant to the settlement, including the criteria for being a claimant or provider subclass member, how to submit a claim, and how to opt out of the settlement class.

The trial court preliminarily approved the settlement agreement. *See* ORCP 32 D ("[A]ny action ordered maintained as a class action shall not be voluntarily dismissed or compromised without the approval of the court[.]"). Following the preliminary approval, objectors filed objections to the proposed settlement.

Objectors, along with being members of the settlement claimant subclass, were members of a putative class composed of Delaware insureds (Delaware class)[6] who had PIP coverage provided by defendants and who sought recovery of unpaid interest penalties pursuant to a Delaware "late payment" statute, Delaware Code Annotated, title 21, section 2118B.[7] Among other things, that statute requires that,

---

[5] Potential claimant and provider subclass members received both individual notice and a claim form, whereas the policyholder subclass members, as the only class members ineligible to submit a claim form to receive settlement proceeds, received only the individual notice.

[6] The putative Delaware class filed an action in Delaware state court on February 10, 2005. As of the April 2006 hearing assessing the objections to the settlement agreement in the present action, the Delaware court had not certified that class. The named plaintiff in the Delaware action, Peel, first sought to intervene in the present action, but was denied intervention because the settlement class definition excluded named plaintiffs in pending PIP lawsuits filed against defendants before February 11, 2005. Accordingly, Peel was not a member of the present settlement class and therefore lacked standing to intervene. Objectors did not face the same obstacle because they were not named plaintiffs in the Delaware class action.

[7] Del Code Ann, title 21, § 2118B provides, in part:

"(c) When an insurer receives a written request for payment of a claim for [PIP] benefits * * *, the insurer shall promptly process the claim and shall, no later than 30 days following the insurer's receipt of said written request for

when an insurer receives a written request for payment of benefits under a PIP policy, the insurer must respond to the claimant within 30 days with either payment of the claimed benefits, or, in the event of a full or partial denial of such benefits, a written explanation for the denial. If an insurer fails to comply with those requirements, then the insurer must pay the claimant the unpaid benefits due plus interest at rates set by the statute, as well as costs and attorney fees if the claimant can show that the insurer acted in bad faith.

The trial court held a hearing to determine the fairness, reasonableness, and adequacy of the settlement. ORCP 32 D; *see also* ORCP 32 B (listing factors required to find that "class action is superior to other available methods for the fair and efficient adjudication of the controversy"). There, objectors raised two challenges that they now raise on appeal: that the settlement could not release the Delaware "late payment" claims, and that the notice was inadequate and misleading.

As to the notice issue, defendants introduced the testimony of Hilsee, an expert on notice who helped the parties in this case draft, create, and disseminate the notice. Hilsee testified, among other things, that the format of the notice followed standards set in national model notices, that the content of the notice adequately informed readers of the claims that the settlement released, and that including specific information about the putative Delaware action would

---

first-party insurance benefits and documentation that the treatment or expense is compensable * * *, make payment of the amount of claimed benefits that are due to the claimant or, if said claim is wholly or partly denied, provide the claimant with a written explanation of the reasons for such denial. If an insurer fails to comply with the provisions of this subsection, then the amount of unpaid benefits due from the insurer to the claimant shall be increased at the monthly rate of:

"(1) One and one-half percent from the 31st day through the 60th day; and

"(2) Two percent from the 61st day through the 120th day; and

"(3) Two and one-half percent after the 121st day.

"(d) * * * Any judgment entered for a claimant in a civil action or arbitration proceeding brought under this section shall include, in addition to the amount due and any additional amount provided for by subsections (b) and (c) of this section, an award for the costs of the action and the prosecution of the action, including reasonable attorney's fees * * * [but only] if it is found that the insurer acted in bad faith."

have fostered confusion rather than clarity. After counsel for defendants and for objectors presented arguments, the trial court rejected objectors' notice argument by finding that

> "the notice is adequate. I feel the testimony by Mr. Hilsee is persuasive, * * * that all the claims cannot reasonably be expected to be included, let alone all the state claims that arise out of the auto accident that gave rise to the claims for which are to be settled through the class action. Specifically, they are derivative claims, is the way I look at it. Now, maybe that's not technically correct, but you're never going to get a late payment claim if you don't have any injury for which you're going to get paid for in the first place. That's got to come subsequent to the injury. And that is what was covered by the notice."

The court also rejected, by letter opinion, objectors' argument that the court should exclude the Delaware late payment claims from the claims released by the settlement. Accordingly, the trial court approved the settlement as fair, and dismissed the action with prejudice.

Objectors appeal, assigning error to the trial court's approval of the settlement in two respects: first, in essence, that the settlement purported to release unpleaded claims arising from a different factual predicate than that of the pleaded claims,[8] and, second, that the notice afforded to potential class members was inadequate and misleading.

■ Before we confront the specific assignments of error, we resolve a disagreement between objectors and defendants as to the appropriate standard of review. Although no Oregon precedent states the appropriate standard to apply in reviewing a trial court's approval of a class settlement under ORCP 32 D, Oregon case law assessing whether a proceeding shall

---

[8] That statement of the first assignment of error differs from what objectors state in their brief, which reads as follows: "The trial court erred in permitting the class representatives to purport to release claims that they themselves do not possess." We restate objectors' first assignment of error for clarity, in light of the content of their briefs and oral argument. Based on that material, we do not understand objectors to assert on appeal that the class representatives, as non-Delaware residents, could not release a statutory claim under a theory that is available only to Delaware residents. To the extent that objectors *do* advance that argument, we are aware of no authority that supports that assertion, and we accordingly reject it without discussion.

be conducted as a class action under ORCP 32 B offers guidance. In those cases, we give a trial court's determination whether a proceeding shall be conducted as a class action "wide latitude," because it is largely a matter of judicial administration. *Alsea Veneer, Inc. v. State of Oregon*, 117 Or App 42, 52, 843 P2d 492 (1992), *rev'd in part on other grounds*, 318 Or 33, 862 P2d 95 (1993) (quoting *Newman v. Tualatin Development Co. Inc.*, 287 Or 47, 51, 597 P2d 800 (1979)). In *Newman*, the court based its conclusion, in part, on the "abuse of discretion" standard of review for class certification in use by federal courts. 287 Or at 51.

██ Along those lines, federal courts evaluating proposed class action settlements under ORCP 32 D's federal counterpart, FRCP 23(e) ("[a] class action shall not be dismissed or compromised without the approval of the court"), have noted that the "universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable." *Class Plaintiffs v. City of Seattle*, 955 F2d 1268, 1276 (9th Cir), *cert den*, 506 US 953 (1992) (internal quotation marks and citation omitted). Accordingly, the decision to approve a settlement "is committed to the sound discretion of the trial judge" and the reviewing court will reverse "only upon a strong showing" that the lower court's determination was "a clear abuse of discretion." *Id.* (internal quotation marks and citation omitted); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F3d 96, 106 n 12 (2d Cir), *cert den*, 544 US 1044 (2005) ("We review the district court's approval of the instant class action settlement for abuse of discretion.").

██ Accordingly, we review the trial court's approval of the class action settlement for abuse of discretion. However, we review the trial court's legal conclusions for errors of law. *Alsea Veneer, Inc.*, 117 Or App at 52; *cf. Wal-Mart Stores, Inc.*, 396 F3d at 106 n 12 (stating that questions of law raised on appeal of lower court's approval of class action settlement are reviewed under federal *de novo*—that is, legal error—standard). Whether unpleaded claims released by a proposed settlement arise from the same factual predicate as the pleaded claims is a question of law. *See, e.g., Lutterman and Lutterman*, 195 Or App 124, 126, 131, 97 P3d 664 (2004) (whether doctrine of claim preclusion bars later claims based on same "factual transaction" reviewed for errors of law);

*Reid v. Johnson,* 161 Or App 92, 94, 983 P2d 1061, *rev den,* 329 Or 528 (1999) (same). Accordingly, here, we review objectors' first assignment of error—that the court's determination that the Delaware late payment claims arise from the same factual predicate as the pleaded claims in the present case—for legal error.

■   In advancing their first assignment of error, objectors argue that the core factual predicate of the pleaded claims underlying the settlement differs from the Delaware claims insofar as the former claims challenge defendants' alleged *underpayment* of claims and seek recovery of the deficient payment, whereas the latter claims challenge defendants' alleged systematic *late payment* of claims and seek the recovery of only the interest accrued on those late payments. Accordingly, objectors assert, the trial court erred in approving a settlement that released claims arising from a different factual predicate. Defendants counter that the core factual predicate here is their payment and alleged mishandling of submitted MedPay and PIP claims, and it is not limited solely to the mishandling of those claims under a "capped payment" theory, as objectors contend. As such, defendants assert, the trial court did not err. We agree with defendants.

■■   As a rule in federal courts, in approving a proposed class settlement,

> "[t]he weight of authority holds that a federal court may release not only those claims alleged in the complaint, but also a claim 'based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented *and might not have been presentable in the class action.*'"

*Class Plaintiffs,* 955 F2d at 1287 (quoting *TBK Partners, Ltd. v. Western Union Corp.,* 675 F2d 456, 460 (2d Cir 1982)) (emphasis in *Class Plaintiffs*); *see also In re Prudential Ins. Co. of America,* 261 F3d 355, 366 (3d Cir 2001) (recognizing rule); *In re Corrugated Container Antitrust Litigation,* 643 F2d 195, 221 (5th Cir 1981) ("[A] court may release not only those claims alleged in the complaint and before the court, but also claims which could have been alleged by reason of or in connection with any matter or fact set forth or referred to in the complaint." (Internal quotation marks and citation

omitted.)).[9] Further, a settlement may release claims described in "somewhat broader" terms than those claims that were specifically pleaded. *In re General American Life Ins. Sales Prac. Lit.*, 357 F3d 800, 805 (8th Cir 2004). However, although a release may be broadly worded, such a release is only *"enforceable* as to subsequent 'claims relying upon a legal theory different from that relied upon in the class action complaint, but depending upon the same set of facts.' " *Williams v. Boeing Co.*, 517 F3d 1120, 1134 (9th Cir 2008) (quoting Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions* § 12:15 (4th ed 2002)) (emphasis in original). Courts have adopted those rules in the interest of judicial economy because they permit "parties to enter into comprehensive settlements that prevent relitigation of settled questions at the core of the class action." *In re Prudential*, 261 F3d at 366 (internal quotation marks and citation omitted).

Hence, our first task under this analysis is to identify the factual predicate that makes up the core of the settlement agreement. The Ninth Circuit recently engaged in that inquiry in *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F3d 741 (9th Cir 2006). In that case, the plaintiffs were class members of a then-proposed settlement in a case that was being litigated in a New York federal court (*Wal-Mart* settlement). In a California federal court, the *Reyn's* plaintiffs collaterally challenged a ruling by the *Wal-Mart* court in which that court had concluded that the *Wal-Mart* settlement released the claims that the plaintiffs were asserting in the *Reyn's* class action. The *Wal-Mart* settlement originated around allegations that Visa and MasterCard obtained excessive discount fees from merchants and conspired to monopolize the debit-card market by engaging in an illegal "tying arrangement" that required merchants that accepted their credit cards to also accept their debit cards. *Reyn's*

---

[9] The parties have not identified, and we are not aware of, any Oregon case that addresses the permissible scope of a class-action settlement under ORCP 32 D. However, Oregon statutes governing class actions are modeled after the federal rules. *Compare generally* ORCP 32 *with* FRCP 23. Hence, decisions by federal courts on class action settlements are persuasive. *Cf. Forest Grove Brick v. Strickland*, 277 Or 81, 87 n 8, 559 P2d 502 (1977) (stating that federal court decisions on FRCP 56(c) "are of helpful guidance" in interpreting identical Oregon summary judgment statute).

*Pasta Bella,* 442 F3d at 745. The resulting *Wal-Mart* settlement purported to absolve the defendants and their member banks from all antitrust liability arising out of past conduct related to the claims asserted in the *Wal-Mart* class action. *Id.*

In the meantime, the *Reyn's* putative class claimed that the defendants and their member banks had engaged in price fixing that drove up the interchange rate, which, in turn, resulted in the plaintiffs receiving less for their goods than they would have received in an open market. *Id.* at 744-45. The Ninth Circuit held that the *Wal-Mart* settlement was fair in extinguishing the *Reyn's* plaintiffs' claims because

> "the *Wal-Mart* class action was predicated on the harm merchants suffered from the elevated interchange fees caused by Defendants' anti-competitive conduct. While Plaintiffs seek to hold Defendants liable by positing a different theory of anti-competitive conduct, the price-fixing predicate (price-fixing interchange rates) and the underlying injury are identical."

*Id.* at 749.

So too, here. Objectors seek to hold defendants liable by advancing a different theory of improper underpayment of PIP and MedPay claims—that is, by failing to properly process and pay the amounts due on claims within the 30 days prescribed by the Delaware statute, defendants owe statutory interest on amounts paid late. However, the underlying predicate (claims made during the class period for medical treatment under PIP and MedPay provisions of automobile policies) and the underlying injury (defendants' underpayment of those claims through the use of cost-containment software) remain identical under both theories of liability.

Although it is true that the Delaware class would likely need to establish *additional* facts as to defendants' alleged wrongdoing, such as the timing of payments or notices of denial, the underlying facts remain identical for the settlement claimant subclass and the Delaware class members who are releasing claims: (1) members sustained injuries covered by PIP or MedPay; (2) members submitted claims for those injuries; (3) members had claims processed

using cost-containment software; and (4) members allegedly received less for their claims than they should have.[10]

In other words, whether the alleged underpayment is due to defendants' improperly capping the claims or to defendants' failing to pay interest due under Delaware law on late payments that resulted from improper capping, the core factual predicate involves the claims for medical benefits that claimants submitted to defendants under their PIP and MedPay policies and defendants' subsequent mishandling of those claims. Delaware law simply provides a different or additional source of damages for the same conduct by defendants: the use of their cost-containment software. In short, objectors seek to relitigate that same predicate under a different legal theory.

Objectors invoke two cases in which federal courts determined that settlement releases improperly extinguished claims that did not arise from the same core factual predicate as the pleaded, settled class claims. We disagree that those cases provide relevant persuasive support for objectors' position here. In one, *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F Supp 3d 561, 565 (ED Pa 2001), the plaintiffs in the original class action alleged that the National Football League (NFL) violated antitrust laws by "bundling" (that is, requiring purchasers to purchase all regular season Sunday afternoon games, rather than a single game) its "Sunday Ticket" satellite broadcasting package. That release purported to extinguish future claims arising out of the NFL's conduct related to its Sunday Ticket satellite broadcasting package as well as its future conduct related to cable and Internet broadcasting packages. *Id.* at 567-68. The district court, after examining the case's litigation history, determined that the release was too broad, because the exclusive focus of the underlying litigation and allegations had

---

[10] We note that any members of the putative Delaware class who received the *full* amount of their medical benefits claim, but received that amount under circumstances that did not comply with the requirements of Delaware Code Annotated, title 21, section 2118B, are *not* precluded from bringing their claims against defendants in the Delaware case, because receiving the *full* amount of their medical benefits claim excludes them from the settlement class in the present action. Further—and, again, by virtue of the class definition—claims made under PIP for unpaid interest on funeral benefits or lost wages are not released by the settlement.

been the NFL's conduct pertinent to its satellite broadcasts. Accordingly, the settlement could not release later claims related to the NFL's future conduct regarding cable and Internet broadcasts of its games. *Id.* at 577-78.

In the other, *National Super Spuds v. N. Y. Mercantile Exchange*, 660 F2d 9 (2d Cir 1981), the underlying settlement bound a class that was defined as persons who had owned futures contracts that they had liquidated between April 13 and May 7, 1976. That settlement purported to release, among other things, claims based on futures contracts that remained unliquidated *after* May 7, 1976. *Id.* at 14. The Second Circuit held that those unliquidated futures claims could not properly be barred by the settlement. *Id.* at 21. In reaching that conclusion, the court noted that the gravamen of the pleaded complaint was that the defendants' conduct had caused injury to those who had liquidated their contracts during the relevant class period, not those with unliquidated contracts. *Id.* at 16-17. Hence, the settlement could not properly extinguish claims based on a different factual predicate, that is, those contracts that were unliquidated after the relevant time period.[11]

Objectors argue that, as with the objectors in *Schwartz*, whose claims arose from practices for selling cable and Internet broadcasts rather than satellite broadcasts, and in *National Super Spuds*, whose claims arose from unliquidated futures contracts held after the class date as opposed to liquidated contracts during that period, their Delaware claims requesting unpaid interest and punitive damages for late payment of medical benefits likewise can be differentiated from those of the settlement class requesting damages for the improper capping of medical benefits. We disagree. In both *Schwartz* and *National Super Spuds*, the underlying settlements purported to release claims based on entirely different factual interests and issues. In *Schwartz*, the factual predicate comprised the NFL's past conduct toward Sunday Ticket satellite broadcast subscribers and those subscribers'

---

[11] Further, in that case, the settlement notice had indicated that the only claims that the settlement would extinguish were those related to the liquidated claims; the unliquidated claims were later added after the objector lost the opportunity to opt out of the class. *National Super Spuds*, 600 F2d at 19.

subsequent harm, not the NFL's future conduct toward subscribers of nonsatellite broadcasts. Likewise, in *National Super Spuds*, the core factual predicate involved the harm caused to those who liquidated their futures contracts during the class period (based on tort law), whereas the improperly released claims involved the damage caused to unliquidated futures holders after the class period (based on contract law).

Here, had the settlement purported to release claims, for example, on life insurance policies, or for uninsured motorist benefits, or on claims for PIP medical benefits submitted after the relevant class period, *Schwartz* and *National Super Spuds* perhaps would have provided more relevant authority. However, objectors in the present case became members of the claimant class when they submitted claims for medical benefits under their PIP or MedPay policies during a particular time period and allegedly received less for their claims than they should have. Those claims for medical benefits, then, are deemed to be settled by the agreement.

In sum, based on the record here, our conclusion that the Delaware late payment claims arise from an identical factual predicate as the benefit-capping claims pleaded in the underlying settlement comports with the holdings in *Schwartz* and *National Super Spuds*. Accordingly, the settlement release is not invalid for purporting to release the Delaware late payment claims. The trial court did not err in making that determination.

■ We turn to objectors' second assignment of error: that the notice to the settlement class members was inadequate. Objectors focus their challenge on the content of the notice, which was sent to potential class members and followed a question-and-answer format. Under the "Basic Information" heading, section three stated, in part:

"3. What is this lawsuit about?

"The lawsuit claimed that [defendants] improperly used undisclosed computerized bill-review systems to limit payments to medical providers and/or reimbursements to injured people for medical treatments covered by [MedPay and/or PIP] coverage provided under personal auto policies."

Later, under a heading entitled "How to Get a Payment—Submitting a Claim Form," section 22 stated, in part:

"22. What am I giving up to get a payment or stay in the Class?

"Unless you exclude yourself, you are staying in the Class, and that means that you can't sue [defendant] over the claims settled in *this* case. It also means that all of the Court's orders will apply to you and legally bind you. If you submit a claim form, or simply stay in the Class, you will agree to 'release and discharge' [defendant] as described in sections 19-20 and 41-43 of the Settlement Agreement. A complete copy of the Settlement Agreement can be obtained at www.froeberclaims.com. The Settlement Agreement specifically describes the released claims in necessarily accurate legal terminology."

(Emphasis in original.)

The notice further explained, among other things, the criteria for each type of subclass, what subclass members receive by participating in the settlement, how subclass members could submit a claim, how potential members could opt out of the class, and what consequences would result for a class member who submitted a claim, opted out, or did nothing. Notwithstanding that additional information, objectors argue that the emphasis on "claims settled in *this* case" in section 22, read together with the description of the lawsuit in section three, is inadequate and affirmatively misled Delaware recipients to believe that their statutory late payment interest claims remained intact if they remained in the settlement class.

■ We disagree that the notice is inadequate. The federal standard for whether a settlement notice is adequate "is measured by reasonableness"; the notice must "fairly apprise" prospective class members of a proposed settlement's terms and their available options in connection with the proceedings. *Wal-Mart Stores, Inc.*, 396 F3d at 113-14 (quoting *Weinberger v. Kendrick*, 698 F2d 61, 70 (2d Cir 1982) (internal quotation marks and brackets omitted)). "Notice is 'adequate if it may be understood by the average class member.'" *Id.* at 114 (quoting Conte & Newberg, 4 *Newberg on*

*Class Actions* § 11:53 at 167). However, courts have also recognized that notice to potential class members need not explain all of the consequences involved in the settlement; nor is it required to be a complete source of settlement information, and the potential class members are not expected to rely on it as such. *Maher v. Zapata Corp.*, 714 F2d 436, 451-52 (5th Cir 1983); *see also Wal-Mart Stores, Inc.*, 396 F3d at 115-16 (where expansive reach of release "could not have been clearer," further explanation of the effects of the release provision are unnecessary); *Bell Atlantic Corp. v. Bolger*, 2 F3d 1304, 1317-18 (3d Cir 1993) (rejecting argument that reasonably clear notice further required notice of parallel state court litigation).

Consistently with those standards, the notice here was "reasonably clear" and "fairly apprise[d]" recipients of the proposed settlement terms: It summarized the basis for the underlying settlement, explained that those who submitted a claim or simply declined to opt out of the class would release claims settled in the case, and directed recipients to the relevant sections of the Settlement Agreement explaining the precise scope of the release, the web site where the Settlement Agreement was available in its entirety, and a toll-free number where notice recipients could ask questions. In addition, the notice adequately explained that those who opted out of the settlement would retain their ability to sue defendants on issues related to the settled claims. Further, those conclusions had support in Hilsee's expert testimony, which—although such expert testimony is not strictly required to support a determination that notice is adequate—lent persuasive support that objectors did not counter or controvert with evidence of their own. Although the notice did not specifically alert prospective class members of the putative Delaware class action by overt reference, the notice was sufficiently clear so as to not require such a disclosure. In sum, the notice was adequate.

Finally, we reject objectors' argument that the notice was misleading. Reading the content of the notice together as a whole—not just the two sections that objectors chose to read in isolation—the notice explained to claimant subclass members that they were part of the settlement because they had submitted a PIP or MedPay claim for medical benefits

during the class period and received less for their claim than they had requested. The notice further indicated that, unless they opted out of the settlement, class members would be participating in the settlement and, accordingly, settling those submitted claims. Based on that content, read in concert with the other information provided in the notice, a reasonable person in an objector's position should have understood that, by participating in the present settlement, he or she could not bring an action under a different theory to recover additional money on those same claims.

Hence, we conclude that the settlement was fair inasmuch as it purported to release the Delaware late payment claims and that the notice was reasonably clear so as fairly to apprise recipients of the scope of the claims being released. The trial court did not abuse its discretion by approving the settlement.

Affirmed.